69726, 69727, 69728. MITCHELL v. THE STATE (three cases).
(330 SE2d 798)

POPE, Judge.

In a bench trial, appellant was tried and convicted of offenses charged in three separate indictments. Each conviction is for driving under the influence of alcohol and/or driving a motor vehicle after being declared a habitual violator. Each indictment alleged the offenses to have occurred on separate dates. Appellant appeals sepa-

rately from his convictions on all counts of each of the three indictments. As at trial, we have consolidated the appeals for review.

1. In Case Nos. 69726 and 69727, appellant appeals only from his convictions for driving under the influence of alcohol. He enumerates as error the admission into evidence of the results of intoximeter tests contending that the State presented no evidence to show that he understood his rights under the implied consent laws which were read to him. See OCGA §§ 40-5-55 and 40-6-392. Appellant's conviction for DUI in Case No. 69727 arises from an incident on August 21, 1982 in which Laurens County Deputy Sheriff Hooks observed appellant driving a 1972 green Oldsmobile Cutlass at a high rate of speed and following too closely the car ahead of him. When Deputy Hooks caught up with appellant, he had already pulled over and exited the automobile. When asked for his driver's license, appellant admitted that he had none. Appellant further admitted that he had had a "couple of beers." He smelled of alcoholic beverage and his eyes were bloodshot. Deputy Hooks arrested appellant and took him first to his home to arrange for the retrieval of his car, then to the Sheriff's Department where appellant was read the implied consent laws and rights attendant thereto. He submitted to an intoximeter test which showed a blood-alcohol content of .11 percent.

Appellant's conviction for DUI in Case No. 69726 is based upon an incident occurring on December 24, 1982 when State Trooper Faircloth, along with a fellow officer, was stopping vehicles at a road check set up in Laurens County. Trooper Faircloth testified that he observed a green Oldsmobile, late 1960's or early 1970's model, approaching the road block when, approximately 800 to 1,000 feet from it, the driver suddenly steered the car across the centerline, turning down into an uncultivated field. The driver was wearing a baseball cap. Trooper Faircloth then went to investigate, finding the car in a muddy section of the field with the doors open. Appellant, wearing a baseball cap, was accompanied by a woman who was near the passenger side and wearing no hat. Appellant and his female companion were picking weeds when Trooper Faircloth arrived. Footprints in the mud showed that appellant had exited the automobile from the driver's side. Appellant's speech was somewhat slurred and he smelled of alcoholic beverage. Trooper Faircloth was familiar with appellant as a habitual violator and knew that he had no driver's license. Appellant was placed under arrest and advised of the implied consent law and his rights to independent chemical analysis pursuant to OCGA §§ 40-5-55 and 40-6-392. The intoximeter test showed his blood-alcohol content to be .10 percent.

Appellant relies upon the opinion in *Davis v. Pope*, 128 Ga. App. 791 (4) (197 SE2d 861) (1973), in support of his argument that the State must show that he actually understood his rights. We disagree.

It is true that "[t]o be 'informed' it is necessary that the driver understand the import and meaning of the police officer's instructions to him." *Davis v. Pope,* supra at 793. However, in *Davis v. Pope* the defendant driver was advised of his rights during a time when he was "so far under the influence of strong drink that the arresting officer would have put him in jail for being drunk in public if he had seen him not in a vehicle." Id. at 792. On appeal the court declined to reverse his conviction based upon a possibility of his lack of understanding of the law as read to him. In this case, both arresting officers testified that appellant was properly advised of his rights under the Georgia implied consent law. "This included advising [appellant] that he had the right to an additional chemical test by personnel of his choice, in addition to those administered at the direction of a law enforcement officer. [Appellant] was advised that any additional test would in no way satisfy his obligation to submit to the chemical test administered at the direction of a law enforcement officer and that failure to submit to the chemical test administered at the direction of a law enforcement officer would result in his license being suspended for a period of six months. The [appellant] having been advised as required by OCGA § 40-6-392 (a) (4) [and OCGA § 40-5-55], his consent to submit to the chemical test was a valid informed choice." *Griggs v. State,* 167 Ga. App. 581, 582-83 (307 SE2d 75) (1983). Appellant presented no evidence and absolutely nothing is raised by the evidence to suggest that appellant did not in fact understand, or was incapable of understanding, the law and his rights as read to him by the officers. There was, accordingly, no error in admitting into evidence the results of both intoximeter tests.

2. Appellant's next enumeration of error challenges his conviction in Case No. 69728 for the offense of driving a motor vehicle after being declared a habitual violator. The State presented evidence to show that on September 26, 1982 at approximately 7:30 p.m. while still daylight, a law enforcement officer observed a 1970 to 1973 green Oldsmobile Cutlass suddenly enter the highway in front of him, traveling at a high rate of speed and throwing gravel and dust. The officer followed the green Oldsmobile for approximately two or three miles and saw it weaving from side to side, across the centerline, and leaving the roadway on the shoulder. He observed a black male driving with one passenger. The officer switched on his blue light, whereupon the green car turned left and accelerated. The officer turned on his siren. The green car was then traveling in excess of 85 m.p.h. through several turns on a dirt road. During the pursuit, the officer had radioed the tag number and description of the vehicle. When the car entered the dirt road, the officer followed it through the dust where, finally, it left the road and pulled in behind a house. When the officer stopped behind the car, no one was inside it. The green Oldsmobile

Cutlass was impounded. The next day, appellant went to the Sheriff's Department asking to claim his car. Although initially advised that the license tag check revealed Zolie Mitchell to be the registered owner, prior to appellant's appearance at the Sheriff's Department, the officer learned that the vehicle belonged to appellant, Herschel Mitchell. The officer asked appellant who was in the car during the pursuit on the preceding day. Appellant stated that his girlfriend was with him. The officer told appellant that the person whom he saw driving was not a female. Appellant then said he was driving at that time. He was then arrested.

Appellant contends that because he had not been given *Miranda* warnings at the time he admitted driving the car, the statement should have been suppressed. Such failure, he asserts, constitutes reversible error. We find no error in the admission of the statement.

"The well-established rule as announced by the United States Supreme Court is that 'the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' *Miranda v. Arizona*, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966).

"The appellant had not been arrested at the time of the damaging statement. However, he argues that the requirement for *Miranda* warnings existed because the focus of the investigation was on him and because he was, in fact, in police custody. The [S]tate argues that the appellant was not in custody and that his statement was . . . volunteered . . .

"This court has held on a number of occasions that such questions as were put to appellant here amounted to permissible 'threshold inquiries.' [Cits.] Although the focus of investigation was upon the appellant, we conclude that he was not in custody, and that his volunteered response was admissible in evidence. [Cits.]" *Chester v. State*, 157 Ga. App. 191 (276 SE2d 684) (1981).

3. Appellant contends that even if his statement was properly admitted into evidence, the trial court erred in convicting him in Case No. 69728 because the only evidence of his guilt was his uncorroborated confession. Appellant relies upon that part of OCGA § 24-3-53 which provides: "A confession alone, uncorroborated by any other evidence, shall not justify a conviction." The State argues that no confession is involved since appellant's incriminatory statement admitted only his operation of the vehicle on the previous day. The offense for which appellant was tried required the State to prove that appellant

had been previously declared a habitual violator, that he had been duly notified of his status as such, *and* that he had driven the car in violation of such habitual violator status. See generally *Brown v. State*, 167 Ga. App. 851 (1) (307 SE2d 737) (1983); *Norrell v. State*, 116 Ga. App. 479 (2) (157 SE2d 784) (1967). We find that even if the statement is viewed as a "confession," sufficient corroborative evidence was presented to support his conviction. The law enforcement officer who pursued the car, which appellant on the next day voluntarily attempted to retrieve from the Sheriff's Department, testified that a black male was driving with one passenger. Also, the car he followed, a green Oldsmobile Cutlass, matched the description of the car shown to have been driven by appellant on at least two other occasions: August 21, 1982 and December 24, 1982. Appellant was shown to have a Montrose, Georgia address and the incidents for which appellant was tried for driving in violation of his habitual violator status (August 21, 1982, December 24, 1982 as well as September 26, 1982) occurred in the same area, in or just outside Montrose, Georgia in the area of U. S. Highway 80 and a county road called Harry Green Road. "The amount of evidence necessary to corroborate a confession is left entirely within the province of the [fact-finder] and corroboration in any material particular satisfies the requirements of the law." *Reynolds v. State*, 168 Ga. App. 555 (309 SE2d 867) (1983). Accord *Steele v. State*, 166 Ga. App. 24 (1) (303 SE2d 462) (1983). "Taken as a whole, the evidence was sufficient to enable a rational trier of fact to find [appellant] guilty beyond a reasonable doubt." *Hunt v. State*, 166 Ga. App. 524, 525 (304 SE2d 576) (1983). The trial court committed no error for any reason assigned.

*Judgments affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED APRIL 17, 1985.

*Samuel A. Hilbun*, for appellant.
*Beverly B. Hayes, District Attorney*, for appellee.