## 72308. CONLEY v. THE STATE.
(352 SE2d 394)

BENHAM, Judge.

A jury found appellant guilty of driving under the influence of alcohol (OCGA § 40-6-391) and acquitted him of failure to dim head-

lights (OCGA § 40-8-31). Appellant seeks reversal of his judgment of conviction, claiming that the trial court erred in denying his motion to suppress evidence and in denying his motion in limine. We affirm the judgment.

Trial testimony revealed that two police officers, traveling north on Highway 85 in Riverdale, had stopped at a red light at the intersection of Highway 138 when they observed appellant's vehicle with its bright lights on approximately one and a half car lengths away, traveling south on Highway 85. The officer driving the police vehicle flashed his bright lights a few times as a signal for appellant to dim his lights. Appellant failed to do so and drove his vehicle into the parking lot of a nearby restaurant, where the officers followed him. Both appellant and the officers exited their vehicles, affording the officers an opportunity to observe and talk to the appellant for approximately ten minutes. They concluded that appellant was intoxicated and informed him of their belief. Appellant stated he was an insurance agent who "couldn't afford a D.U.I. on his record" and "asked for a break." The officers then advised appellant he was going to be placed under arrest and taken to the Riverdale Police Department for a breath test. They placed him in the police vehicle and read him the implied consent warnings.

1. Appellant complains that the evidence obtained as a result of the stop should have been suppressed because the officers had no probable cause to stop him since their vehicle was not an oncoming vehicle within the meaning of OCGA § 40-8-31. We disagree. OCGA § 40-8-31 (1) states that "[w]henever a driver of a vehicle approaches an oncoming vehicle within 500 feet, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver." We will not hold that a motor vehicle that has stopped for a traffic light is no longer an "oncoming vehicle." The trial testimony makes it clear that the two vehicles were in the process of coming toward each other. There was probable cause for the officers to act as they did, even though appellant was not convicted of committing the traffic offense. See *McElroy v. State*, 173 Ga. App. 685 (1) (327 SE2d 805) (1985).

2. Appellant argues that the statements he made to the arresting officers should not have been allowed at trial since they were not disclosed in response to his notice to produce. Appellant was not in police custody but was only detained pursuant to a traffic stop at the time he made the voluntary statements. Therefore, the statements need not have been disclosed pursuant to OCGA § 17-7-210, and the trial court committed no error in allowing their admission. *Hudgins v. State*, 176 Ga. App. 719 (1) (337 SE2d 378) (1985); *Wilson v. State*, 173 Ga. App. 805 (1) (328 SE2d 418) (1985).

*Judgment affirmed. Deen, P. J., McMurray, P. J., Sognier and*

*Pope, JJ., concur. Banke, C. J., Birdsong, P. J., Carley and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

While I fully concur in Division 1, I respectfully dissent from Division 2.

1. The legislature *requires* the state to give to defendant, at his request, any oral or written statement "given by him while in police custody." The burden of compliance is on the state; otherwise the statute would be " 'a toothless tiger,' 'a fish that cannot swim,' indeed, a law that it is not necessary to enforce." *Garner v. State,* 159 Ga. App. 244 (282 SE2d 909) (1981).

Defendant did make a specific request in this case and insisted upon it when the subject came up at trial and he had not been provided with any statement. Over his objection, the state was permitted to elicit certain statements from the police officer.

When the officers explained to defendant that they "felt like he was under the influence and were therefore going to require him to take a test, he started to explain to us that he was a State Farm Insurance Agent and he couldn't afford a DUI on his record and that he was — I believe he said that he ran the American Legion Hall in College Park . . . That he closes the American Legion Hall down every night and that he would just really appreciate a break and he said, 'being a State Farm Insurance Agent he couldn't afford a DUI on his record.' And he just repeatedly asked for a break."

The state is of the view that these statements were not made "while in police custody." Of course, it would follow that the mandate of OCGA § 17-7-210 did not apply and the state would not be required to disclose the statements in response to defendant's request in advance of trial but could introduce them into evidence to defendant's surprise.

The evidence here is abundantly clear that defendant was "in police custody" when he made the voluntary distraught statements. Although defendant had not yet been advised in so many words that he was under arrest when he made the statements, nor had he yet been placed in the police car, the officers unequivocally testified that he was not free to leave even before the statements were made. As a matter of fact, it was the very announcement to him that he would be taken in, which prompted the statements. His words were a reaction to the realization that he was then not going anywhere other than the police department.

The police and defendant confronted each other on foot in the restaurant parking lot into which the defendant and his companion had driven. The police had followed them to pursue the failure-to-dim lights violation which they had just observed. That was the traffic

stop. But it went beyond, and escalated to the officers' realization of a more serious offense and their resulting action.

In the confrontation the officers detected manifestations of intoxication exhibited by both defendant and his passenger. They talked with them for about ten minutes and decided to take defendant for an intoximeter test, because they had formed the opinion that he was illegally driving under the influence. At that point, said one officer, "I was not about to let him drive away again." They would not have let him go even if he had wanted to, the officer reiterated, once they formed the opinion that he was intoxicated. And this was before their message conveying this to him prompted the doleful statements.

The other officer confirmed the sequence of events. It was after the officers had formed firm opinions that Conley was intoxicated, and after they told him he would have to go down to take a test because of their belief, that he uttered the incriminating plea.

I find no evidence upon which the trial court could conclude that defendant was not "in police custody" at the time, in the sense intended by the statute, so as to be entitled to disclosure of the statement in preparing his defense. To the contrary, his custody was made quite plain and was in the process of being acted upon.

The statements were not "in response to preliminary questions," and they were incriminating and inculpatory, so the situation is not analogous to that in *Hudgins v. State*, 176 Ga. App. 719 (1) (337 SE2d 378) (1985). Nor were the statements made in response to preliminary questions asked in connection with an initial investigatory stop, as in *Wilson v. State*, 173 Ga. App. 805 (1) (328 SE2d 418) (1985).

OCGA § 17-7-210, the statement-production statute, is only six years old and there seem to be no cases except *Wilson* and *Hudgins* construing the statute in the context of the issue whether defendant was "in police custody" at the time the statement was made. However, the question is often addressed in the familiar *Miranda* setting, when defendant alleges his rights were not explained before custodial interrogation. *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Police custody for those purposes relates to "criminal suspects who had been taken into custody or otherwise deprived of freedom in any significant way." *Dasher v. State*, 140 Ga. App. 517, 518 (1) (231 SE2d 510) (1976). *Dasher* distinguishes that status of the person vis-a-vis the law enforcement officers to be custodial and thus different from that which exists "at the outset of an on-the-scene investigation that had not yet become accusatory," which would be noncustodial. The latter status was found to exist in *Webb v. State*, 179 Ga. App. 101, 102 (1) (345 SE2d 648) (1986), where the police were focusing on an injured and trapped passenger rather than on defendant and had simply moved defendant out of their way and for her

own safety; she was not physically restrained or told not to move.

The "custodial" aspect of *Miranda* was applied also in *Mitchell v. State*, 174 Ga. App. 594, 596 (2) (330 SE2d 798) (1985). There the court, in concluding that appellant was not "in custody" when the statements were made, quoted *Miranda*'s construction of police custody: " 'after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " Id. at 597.

*Collins v. State*, 154 Ga. App. 651, 653 (3) (269 SE2d 509) (1980), was held to involve a non-custodial statement because defendant was just "respond[ing] to an officer's initial inquiry at an on-the-scene investigation which [had] not become accusatory." Likewise *Humphrey v. State*, 174 Ga. App. 165, 166 (2) (329 SE2d 306) (1985), was non-custodial because "defendant had not yet been arrested at the time of his remarks but was being briefly detained pending a response to the trooper's request for information on defendant's driver's license status."

*Wilson*, supra, an OCGA § 17-7-210 (a) challenge, applied in this statutory construction context the *Miranda* meaning of "in custody" as amplified by *Berkemer v. McCarty*, 468 U. S. 420 (3) (104 SC 3138, 82 LE2d 317) (1984). The later *Hudgins* case, supra, used the *Berkemer* meaning of "in custody" for claims of both *Miranda* and OCGA § 17-7-210 (a) violations.

There being no reason to give such plain English in the statute any different meaning from that expressed in *Miranda*, *Berkemer*, and the Georgia cases applying them, I would do as did the court in *Wilson* and *Hudgins* and apply the same meaning to the facts of this case.

Unlike *Berkemer*, here the statements were made *after* the officers articulated their plan to defendant. *Berkemer* recognizes that a person may be subjected to treatment which renders him "in custody," for practical purposes, before formal placement under arrest occurs. Restraints comparable to those associated with a formal arrest would constitute "the functional equivalent of formal arrest." *Berkemer*, supra, 468 U. S. at 442. Defendant's deprivation of freedom in a significant way had been announced and assured. He, as "a reasonable man in the suspect's position[,] would have understood his situation" to be that of custody. That is the test. *Berkemer*, supra, 468 U.' S. at 442.

2. The next question is whether the failure requires a new trial. Does the trial court's error of admissibility, compounding the state's error of silence, call for reversal of the conviction?

That the statements are incriminating is undeniable. That they were brought to the attention of the jury not once, but twice, is borne out by the record. That the state considered them relevant to the question of guilt is demonstrated by the vigor of advocacy in repelling

the effort to exclude them. How can I say that they were harmless, that the jury would have convicted anyway? I do not know the effect on the jury of defendant's efforts to impeach the officers' opinion of intoxication. I do not know the jury's reliance on the validity or accuracy of the breath test, which was testified as producing a reading of .12 percent. The complex and murky problem of judicially second-guessing a jury, removed as it is to the appellate perch, and fraught as it is with intangibles, can easily be avoided by complying with the legislatively-declared policy to apprise defendant of his own statements which the state intends to make the jury aware of. As repeated in *White v. State*, 253 Ga. 106, 109 (2) (317 SE2d 196) (1984): "The purpose of the statute is to inform the defendant 'in writing of all relevant and material portions of his own statement that the state may rely upon to his disadvantage.' [Cit.]."

Thus I would reverse the conviction which is based, in some incalculable measure, on inadmissible evidence which I cannot say "with reasonable certainty" is "patently harmless." *Reed v. State*, 163 Ga. App. 364 (295 SE2d 108) (1982). See *Walraven v. State*, 250 Ga. 401, 405 (2) (297 SE2d 278) (1982). Compare *Wallin v. State*, 248 Ga. 29, 32 (5) (279 SE2d 687) (1981); *Talley v. State*, 251 Ga. 42 (302 SE2d 355) (1983).

I am authorized to state that Chief Judge Banke and Presiding Judge Birdsong join in this dissent.

Decided November 19, 1986 —
Rehearing denied December 19, 1986 —

*Lee Sexton*, for appellant.
*John C. Carbo III, Solicitor*, for appellee.