A91A1822. ANDERSON v. THE STATE.
(416 SE2d 309)

BEASLEY, Judge.

A jury found Anderson guilty of driving under the influence of alcohol to the extent that it was less safe for him to drive, OCGA § 40-6-391 (a) (1); driving with an alcohol concentration of .12 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended, former OCGA § 40-6-391 (a) (4);[1] carrying a concealed weapon, OCGA § 16-11-126 (a); and speeding, OCGA § 40-6-180. He was sentenced on the DUI to the extent that he was a less safe driver and on the weapon and speeding charges. He challenges the evidence, the court's charge, and juror and court personnel conduct.

1. In enumerations of error one through four, Anderson claims that the verdicts on DUI and carrying a concealed weapon were contrary to the weight of the evidence and that the court erred in denying his motions for directed verdicts of acquittal on these three charges. The inquiry is the sufficiency of the evidence. See *Lewis v. State*, 186 Ga. App. 92 (1) (366 SE2d 305) (1988); *Stinson v. State*, 185 Ga. App. 543 (364 SE2d 910) (1988); and *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988), for a discussion of the general grounds.

At approximately 6:30 p.m. a Glynn County police officer was heading southbound on U. S. Highway 341 when he noticed a vehicle heading northbound and appearing to exceed the posted 55 miles per hour speed limit. Radar clocked the speed at 81 miles per hour. The

---

[1] Effective July 1, 1991, OCGA § 40-6-391 (a) (4) was amended to make criminal driving with an alcohol concentration of .10 grams or more.

officer turned around, followed the car and pulled it over.

As Anderson exited, the officer asked for his driver's license and told him why he had been stopped. Anderson commented that he had not realized he was going that fast. As he reached with his left hand toward his left hip area, ostensibly to retrieve his wallet, his waist length jacket "bloused open a little bit" and the officer spotted a .380 caliber automatic handgun. Anderson himself believed that when he stood normally, the end of the pistol was visible only about an inch beneath his jacket. He had a Florida concealed weapon or firearm license but none from Georgia.

The officer told Anderson to place his hands on the hood of the patrol car, which he did. He kept trying to turn toward the officer and the officer told him more forcefully to keep his hands on the car hood.

The officer removed the weapon and handcuffed Anderson. As they spoke, the officer detected the odor of alcohol on Anderson's breath. His speech was "a little slurred" and at one point he indicated confusion about whether he was in Georgia or Florida. By his own admission, Anderson had consumed two vodka drinks and one beer. He failed to pass the field sobriety breath test and was arrested on all charges. An Intoximeter 3000 test administered at the station at 7:36 p.m. showed a blood alcohol level of .12 percent.

As to a conviction under OCGA § 40-6-391 (a) (1), it was not necessary that the State prove that Anderson was drunk when driving but rather that, beyond a reasonable doubt, he was under the influence of alcohol so as to make it less safe for him to operate a motor vehicle. See *Harper v. State*, 91 Ga. App. 456, 458 (2) (86 SE2d 7) (1955). Nor must the State have shown that Anderson committed an unsafe act, *State v. Smith*, 196 Ga. App. 876, 877 (397 SE2d 304) (1990); *Moss v. State*, 194 Ga. App. 181, 182 (390 SE2d 268) (1990), although he was committing the unsafe act of speeding at the time he was initially spotted by the officer.

The Intoximeter 3000 "Taguchi cell" argument in regard to both DUI verdicts is without merit. *Lattarulo v. State*, 261 Ga. 124, 127 (4) (401 SE2d 516) (1991). See also *Hudson v. State*, 197 Ga. App. 428, 429 (1) (398 SE2d 779) (1990), concerning a claim of effect of extraneous factors on the test results.

As to the concealed weapon conviction, the evidence belies the assertion that *initially* the gun was clearly visible to the officer.

The evidence was sufficient to enable any rational trier of fact to find appellant guilty beyond a reasonable doubt of driving under the influence of alcohol in both manners charged and of carrying a concealed weapon. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Directed verdicts of acquittal were not required on these charges. See OCGA § 17-9-1 (a).

2. The fifth enumeration of error challenges the court's charge on

testimony from expert witnesses, urging that it gave undue weight to the testimony of the State's witness and minimized the testimony of defendant's expert witness. No supporting authority is cited.

The charge was as follows: "I refer to the opinion testimony of the arresting officer to the effect that in his opinion the defendant was under the influence of intoxicating beverages to the extent that he was a less safe driver because of having consumed the alcoholic beverages than he otherwise would have been were he not so affected and to the opinion testimony of the defendant's expert regarding the matters within his expertise. And you may give his opinion testimony just such weight and credibility as you, the jury, see fit to give to him."

First, the charge immediately followed the court's clear instruction that the opinion of an expert witness was to be given just such weight and credibility as the jury saw fit.

Second, the instruction was not limited to the State's witness but was neutral in its specific mention of both alleged experts. Moreover, the substance of the lengthy testimony of defendant's expert could not have been readily synopsized for inclusion in the jury instruction, nor was the trial court, by its own statements, able to expand on the expert's area of expertise because of confusion in this regard.

The instruction considered in the context of the whole charge, see *Howell v. State*, 157 Ga. App. 451, 457 (6)-458 (278 SE2d 43) (1981), did not prejudice defendant in the manner claimed.

3. The sixth enumeration of error contends that the court's charge on former OCGA § 40-6-392 (b) (3) was impermissibly burden shifting.

The court charged: "If you should find that a chemical analysis test was run of the defendant's breath, blood, urine or other bodily substances, and that the alcohol contained .10 grams percent or more alcohol in the blood stream, a legal presumption would be established that the defendant was under the influence of intoxicating beverages to the extent that he was a less safe driver than he otherwise would have been were he not so affected.

"However, that is a rebuttable presumption and the burden is on the State to prove that he was under the influence of intoxicating beverages to the extent that he was a less safe driver than he otherwise would have been were he not so affected and/or that his blood stream contained .12 grams percent alcohol or more at the time of his arrest. . . ."

Even though worded in terms of a presumption, former OCGA § 40-6-392 (b) (3) has been held not to create a burden-shifting presumption of guilt but rather to have the " 'effect of defining the level of blood-alcohol that is sufficient to permit an inference that the driver is 'under the influence' " when read in conjunction with OCGA

§ 40-6-391 (a) (1)-(3). *Lattarulo v. State*, supra at 125 (1). However, "the statute may not be charged to the jury using the word 'presumption.'" *Lattarulo*, adopting this portion of *Simon v. State*, 182 Ga. App. 210 (355 SE2d 120) (1987) (physical precedent as to Div. 4), and *Peters v. State*, 175 Ga. App. 463 (333 SE2d 436) (1985) (physical precedent). That is true "even where the jury is instructed that the presumption contained therein is rebuttable." *Peters* at 468 (2).

The erroneous charge requires that the conviction for violation of OCGA § 40-6-391 (a) (1) be reversed.

4. Enumeration of error seven claims that the court committed reversible error in failing to charge OCGA § 40-6-392 (b) (1) and (2), it having charged on the presumption arising from OCGA § 40-6-392 (b) (3). The question is moot because we have already ruled that the charge was fatally flawed. See Division 3, supra.

5. In enumeration of error eight, Anderson contends that it was error to fail to charge the elements of OCGA § 16-11-126. The harm claimed is that there was evidence which would have authorized the jury to find that the firearm was carried openly and fully exposed to view and the instruction should have advised the jury that if the weapon-carrying was in an open manner and fully exposed to view, there was no violation.

The court charged: "[I]t is unlawful for any person to carry a concealed weapon on his person in the State of Georgia and a person who is found guilty of carrying a concealed weapon shall be punished as for a misdemeanor."

First, the denomination and description of the crime, both containing the word "concealed," clearly informed the jury that the prohibition was that the weapon was hidden. See Webster's New Intl. Dictionary, 2d ed. Unabridged, 1959.

Further, contrary to appellant's contention, the evidence was not that the weapon was carried "openly and fully exposed to view." See statement of facts, supra. Neither the circumstance admitted by Anderson at trial, that normally approximately an inch of the gun handle might have been visible below appellant's jacket line, nor the fact that the officer was able to initially view the weapon through an opening in Anderson's jacket, meet the "open" and "exposed" requirements of the statute. *Marshall v. State*, 129 Ga. App. 733 (1) (200 SE2d 902) (1973) (overruled as to license charge, see *Head v. State*, 235 Ga. 677, 679 (221 SE2d 435) (1975).

Considering the evidence in this case together with the instruction, it was not reversible error to fail to charge the remaining "open manner and fully exposed to view" language of OCGA § 16-11-126 (a).

6. In the final enumeration of error, Anderson contends that his convictions should be reversed due to the failure of a court bailiff to refer a juror's question to the court. He claims he was deprived of any

opportunity to consider the juror's question and, if appropriate, have the question answered.

The alleged exchange purportedly occurred during a trial recess. The bailiff testified at the post-trial hearing that a juror asked her "if a juror was allowed to ask a question." The juror prefaced that she was a school teacher and felt like raising her hand at times. It was the bailiff's impression that, in the brief exchange, the juror was making a general query about whether or not a juror could raise a hand and ask a question while in the jury box. The bailiff indicated she did not know but would find out. No aspect of the case on trial was discussed.

The bailiff happened upon the solicitor trying the case and asked whether or not a juror was allowed to ask a question. The solicitor interpreted that question as the bailiff had and responded no. The solicitor was given no indication that the query was prompted by a juror on the case on trial or that any juror at all wished to ask a specific question. The bailiff relayed the answer to the juror and there was no further exchange between the two in this regard.

The juror testified that there had been some discussions of a social nature unrelated to the case between her and some of the bailiffs during the course of appellant's trial and two other trials that week on which she served as a juror, but that she did not recall the subject exchange with the bailiff. The only time she recalled specifically asking about asking a question was when she, as the jury foreperson, raised a question about differing filing dates on Anderson's accusations. At that time the jury was returned to the courtroom, the question was asked and answered on the record. The juror affirmed that there had been no other question or communication about the case or concerning the asking of a question with any court personnel or fellow jurors.

"It has long been recognized by the courts of this state that the guarantee of a fair and impartial jury is a central safeguard to a fair trial in our system of criminal justice. [Cit.] There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. [Cit.] [It has also been] recognized that some irregularities are inconsequential. *Smith v. State*, 218 Ga. 216 (126 SE2d 789) (1962). . . ." *Lockridge v. State*, 260 Ga. 528, 529 (397 SE2d 695) (1990) quoting from *Lamons v. State*, 255 Ga. 511, 512 (340 SE2d 183) (1986).

Assuming that the alleged exchange took place, there was no evidence that the question was asked for any purpose other than general knowledge or that the subject juror or any juror on the case had an unasked and unanswered question about Anderson's case because of any exchange with the bailiff. These circumstances warrant the conclusion that appellant suffered no harm by virtue of the alleged out-

of-court contact, beyond a reasonable doubt.

*Judgment of conviction of OCGA § 40-6-391 (a) (1) reversed. Judgments remaining affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED JANUARY 30, 1992 —
RECONSIDERATION DENIED MARCH 2, 1992 —

*James A. Chamberlin, Jr.,* for appellant.
*Richard H. Taylor, Solicitor,* for appellee.