A93A2502. ANTHONY v. THE STATE.
(441 SE2d 70)

McMURRAY, Presiding Judge.
Defendant, a resident of South Carolina, was charged, via Uni-

form Traffic Citation, with driving a moving vehicle in the State of Georgia while under the influence of alcohol to the extent that it was less safe for him to drive in violation of OCGA § 40-6-391 (a) (1). The case was tried before a jury and the evidence revealed the following:

At about 12:30 in the morning on June 15, 1992, Deputy Melvin Andrews of the Elbert County Sheriff's Department was patrolling a business district outside Elberton, Georgia, when he observed a pickup truck "pulled off the road at Tucker's Flea Market." The deputy drove past the flea market and noticed that the truck was unoccupied. He also noticed that the door on the driver's side of the vehicle was open and that the truck was parked within three or four feet of merchandise that was on display at the flea market. Deputy Andrews turned his patrol car to investigate, but the suspect vehicle was leaving the scene as he approached the flea market. The deputy followed and "called in the tag to see if [he] could get some information on who it belonged to[, but] it . . . just come back to Anthony Wholesale Co., it didn't come back to an individual." Deputy Andrews then radioed for assistance, stopped the suspect vehicle and asked the driver for "his driver's license and insurance and [the driver] asked [the deputy] why was [he] stopping him and [Deputy Andrews] said, that, well, 'I was stopping you because you were down there at the flea market at a business after hours and was suspicious.'" The deputy identified the driver as defendant, detected a strong odor of alcohol and noticed that defendant "had glassy eyes." The deputy then advised defendant pursuant to Georgia's Implied Consent law and administered an "alcosensor" field sobriety test. The "alcosensor" indicated that defendant "was over the limit." A State-administered breath test later indicated that defendant's blood-alcohol concentration was .11 grams percent.

Defendant was found guilty of the offense charged. This appeal followed the denial of defendant's motion for new trial. *Held*:

1. Defendant challenges the sufficiency of the evidence in his first and third enumerations, arguing there is no proof that he actually committed an unsafe act while driving.

A conviction under OCGA § 40-6-391 (a) (1) does not require proof that a person actually committed an unsafe act while driving. *Moss v. State*, 194 Ga. App. 181, 182 (390 SE2d 268). In order to sustain a conviction under this Code subsection, there must be sufficient evidence to authorize a finding, beyond a reasonable doubt, that the defendant was operating or in actual physical control of a moving vehicle while under the influence of alcohol to the extent that it was less safe for him to drive. *Anderson v. State*, 203 Ga. App. 118 (1) (416 SE2d 309).

In the case sub judice, the evidence revealed that defendant had a blood-alcohol concentration of .11 percent within less than an hour

after operating a moving vehicle; that defendant "had glassy eyes" at the time of arrest and that a strong odor of alcohol permeated the vehicle defendant was driving shortly before his arrest. This evidence and testimony that defendant consumed alcoholic beverages before his arrest was sufficient to authorize the jury's finding that defendant is guilty, beyond a reasonable doubt, of driving under the influence of alcohol in violation of OCGA § 40-6-391 (a) (1). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). See OCGA § 40-6-392 (b) (3); *Williams v. State*, 190 Ga. App. 361 (1) (378 SE2d 886).

2. In his second enumeration, defendant contends the trial court erred overruling his motion to strike a prospective juror for cause because the venireman stated that he could not put aside his personal convictions if selected as a member of the jury.

The pertinent portion of the voir dire transcript reveals the following: "THE COURT: Mr. Davis, the legal test in this matter is whether you are able to listen to the evidence from the stand and the charge of the law that I will give you and make a fair and impartial decision. If you do not feel that you can make a fair and impartial decision, from listening to the evidence and applying the law and laying aside your personal convictions then you would be disqualified for this Jury. Do you feel that you can make a fair and impartial decision and put aside your personal convictions? . . . MR. DAVIS: I could not put aside my personal convictions. I could listen to the law and make a judgment, I could listen to the evidence and make a judgment."

While Mr. Davis, the prospective juror, may have initially expressed some confusion or doubt as to his impartiality, he later affirmed that he could put aside his personal convictions and decide the case based solely on the applicable law and the evidence adduced at trial. "The venireman having indicated to the trial court that he could render a fair and impartial verdict based solely on the evidence presented in court the venireman was prima facie competent to serve as a juror in the case sub judice. Whether to strike a juror for favor lies within the sound discretion of the trial court. Under the circumstances of the case sub judice, we find no abuse of the trial court's discretion. *Harris v. State*, 178 Ga. App. 735 (1) (344 SE2d 528); *Foster v. State*, 248 Ga. 409, 410 (3) (283 SE2d 873). This enumeration of error is without merit." *Durham v. State*, 185 Ga. App. 163, 164 (2), 165 (363 SE2d 607).

3. Defendant contends the trial court erred in denying his motion to exclude the results of the State-administered breath test, arguing Deputy Andrews erroneously advised him at the time of arrest that his South Carolina driver's license would be suspended pursuant to Georgia's Implied Consent law (OCGA § 40-5-55) if he refused to submit to a test to determine the drug or alcohol content of his blood.

Specifically, defendant contends the deputy failed to inform him that the Georgia Department of Transportation did not pursue (at the time of defendant's arrest) suspensions of drivers licenses of out-of-state residents who reportedly refused to submit to the chemical test required by OCGA § 40-5-55 (a).

Any failure by the Georgia Department of Transportation in complying with the reporting requirements of OCGA § 40-5-51 pertaining to suspension or revocation of operating privileges of nonresident motorists does not diminish the fact former OCGA § 40-5-55 (c), in effect at the time of the offense in the case sub judice, evoked procedures at the time of defendant's arrest for immediate suspension of any person's driving privileges upon refusal to submit to the chemical test prescribed by OCGA § 40-5-55 (a). Consequently, since the trial transcript reveals that Deputy Andrews advised defendant at the time of arrest of his options pursuant to Georgia's Implied Consent law, this enumeration provides no basis for excluding evidence of the results of the State-administered breath test.

4. Defendant contends the trial court erred in denying his motion to suppress, arguing that he was the subject of an illegal stop by Deputy Andrews.

" ' "Although an officer may conduct a brief investigative stop of a vehicle, see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979), such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 1883, 20 LE2d 889, 909) (1968); *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975). Investigative stops of vehicles are analogous to *Terry*-stops, *Terry*, supra, and are invalid if based upon only unparticularized suspicion or hunch, 392 U. S. at 27 (88 SC at 1883, 20 LE2d at 909). *United States v. Smith*, 799 F2d 704, 707 (11th Cir. 1986). An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. (Cits.) *United States v. Cortez*, 449 U. S. 411, 417 (101 SC 690, 66 LE2d 621) (1981)." (Punctuation omitted.) *Evans v. State*, 183 Ga. App. 436, 438 (359 SE2d 174) (1987). . . .

" ' "(I)n determining when an investigatory stop is unreasonably pretextual, the proper inquiry . . . is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." (*United States v. Smith*, 799 F2d 704, 709 (11th Cir. 1986))' *Tarwid v. State*, 184 Ga. App. 853, 854 (363 SE2d 63)." *Brown v. State*, 188 Ga. App. 184, 186 (372 SE2d 514). In the case sub judice, Deputy Andrews observed an unfamiliar pickup truck at an open-air flea market at 12:30 in the morning. The flea market was closed and was in an area near Elberton, Georgia, that had re-

cently been plagued with a rash of theft-related crimes. The suspect vehicle appeared to be unoccupied, the door on the driver's side of the vehicle was open and that the truck was parked within three or four feet of merchandise that was on display at the flea market. Deputy Andrews attempted to discern the driver of the pickup truck via computer search of vehicle registration records before stopping defendant, but was unable to match a person with the suspect vehicle. Under these circumstances, we cannot say that Deputy Andrews' stop of the suspect vehicle was unreasonable. In fact, it is our view any reasonable law enforcement officer would have stopped defendant under the peculiar circumstances of the case sub judice. See *Atkins v. State*, 209 Ga. App. 70 (432 SE2d 661).

The trial court did not err in denying defendant's motion to suppress.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED DECEMBER 14, 1993 —
RECONSIDERATION DENIED JANUARY 4, 1994 — 

*John M. Clark*, for appellant.
*Gary L. Aston, Solicitor*, for appellee.