## A94A2234. THE STATE v. COLEMAN.
### (455 SE2d 604)

POPE, Chief Judge.

In this DUI case, the State appeals the trial court's grant of defendant's motion in limine to exclude the results of a breath test. We agree with the trial court that the arresting officer misinformed defendant (an out-of-state resident) about the consequences of his refusal to submit to the test, and therefore affirm.

Officer Michael Saunders stopped defendant at a routine roadblock in the early morning hours of September 19, 1992. Defendant had an out-of-state license and an out-of-state tag on his truck. Noticing that defendant smelled of alcohol, seemed nervous, and had red eyes and a flushed face, Officer Saunders administered several field

---

sobriety tests. After defendant performed poorly on these tests, Officer Saunders arrested him and read him the implied consent warning, including the following sentence: "Under OCGA § 40-5-55 and 40-5-153, you will lose your privilege to operate a motor vehicle from six to twelve months should you refuse to submit to the designated State administered chemical test."

This case is controlled by *Deckard v. State*, 210 Ga. App. 421 (436 SE2d 536) (1993), in which we reversed the trial court's denial of a motion in limine under similar circumstances. Georgia is without authority to revoke or suspend a non-resident's driver's license; it may revoke or suspend only the non-resident's privilege of driving a motor vehicle *on the highways of this state.* Id. at 422. Thus, when the non-resident defendant in *Deckard* was told he would lose his driver's license for six months, he was misinformed regarding the consequences of his failure to submit to the test, and such misinformation constituted unlawful coercion. Id. at 422-423. Defendant in this case was misinformed about his options in the same way. The State notes that in *Deckard* the defendant was told that his driver's license would be suspended, while defendant here was told that he would lose his privilege to operate a motor vehicle. This is a distinction without a difference, however, as the officers in both cases omitted the crucial fact that the defendant's refusal to submit to the test would affect his ability to drive *on the highways of this state.* Accordingly, as in *Deckard,* defendant in this case was deprived of making an informed choice, and the test results are inadmissible.

The dissent asserts the officer's warning was not inaccurate since Georgia is obligated to notify the non-resident driver's home state, see OCGA § 40-5-51, and the home state in this case would probably revoke defendant's driving privileges under their own law. But the State of Georgia cannot control or know for certain what other states will do, and the North Carolina law cited by the dissent is not a uniform law. We all agree that we need to provide patrol officers with guidance in this matter, and the rule regarding warnings for out-of-state residents certainly should not depend on which foreign state the driver is from and how that state handles such situations. Thus, in accordance with *Deckard,* the officer's warning should include the limiting language "on the highways of this state."

The dissent also suggests that since the home state *may* revoke the out-of-state resident's license after receiving notification of the Georgia offense, it actually may be inaccurate to limit the warning to "on the highways of this state." However, this potential problem is easily remedied by the insertion of the words "at least," so that non-resident drivers are informed that they will lose their driving privileges, "at least on the highways of this state," for six to twelve months.

*Anthony v. State*, 211 Ga. App. 622 (3) (441 SE2d 70) (1993) and *State v. Reich*, 210 Ga. App. 407 (2) (436 SE2d 703) (1993) are cited as precedent conflicting with *Deckard*. Unlike the defendants in *Deckard* and this case, the defendants in *Anthony* and *Reich* did not argue that the warning was inaccurate because Georgia was without authority to revoke driving privileges beyond its borders; rather, they argued that the warning was inaccurate because Georgia was not at that time fulfilling its statutory obligation to notify the home state. Moreover, the defendant in *Reich* refused to take the test after the warning was given, and as the *Reich* opinion pointed out, it is unlikely that overstating the penalty for refusing to take the test would coerce someone into *refusing* to take the test. Thus, *Anthony* and *Reich* may be technically distinguishable. To the extent that *Anthony* and *Reich* are inconsistent with the holding of *Deckard* and this case, however, *Anthony* and *Reich* are overruled.

*Judgment affirmed. Beasley, C. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. McMurray, P. J., Birdsong, P. J., and Andrews, J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent as it is my view that Georgia's Implied Consent law sufficiently apprises non-resident motorists suspected of drunk driving in Georgia of the consequences of the decision not to submit to a state-administered test for the presence of drugs or alcohol. Further, I believe the majority overrules the wrong case law in this instance. Rather than overrule factually distinguishable holdings in *Anthony v. State*, 211 Ga. App. 622, 624 (3) (441 SE2d 70), and *State v. Reich*, 210 Ga. App. 407, 408 (2) (436 SE2d 703), I would take this opportunity to overrule *Deckard v. State*, 210 Ga. App. 421 (436 SE2d 536), for the following reasons.

There is no question that Officer Michael Saunders properly advised defendant, in the case sub judice, pursuant to the relevant portion of Georgia's Implied Consent law, informing defendant that "you will lose your privilege to operate a motor vehicle from six to twelve months should you refuse to submit to the designated State administered chemical test." See OCGA § 40-5-67.1 (b) (2). However, the majority says this admonition is not enough for non-residents suspected of drunk driving in Georgia because it fails to inform them that Georgia does not have the power to "absolutely suspend or revoke a non-resident's driver's license. . . ." *Deckard v. State*, 210 Ga. App. 421, 422, supra. In other words, the majority steps beyond the basic admonitions prescribed by the legislature in OCGA § 40-5-67.1 (b), further requiring police officers to give non-residents advice regarding possible diminished risks of losing their out-of-state driving privileges for failing to submit to one of the chemical tests required by OCGA § 40-

5-55 (a).[1] This is not practical.

Police officers are not lawyers and they are not required to engage in such legal speculation. See *O'Connor v. Tofany,* 329 NYS2d 715, 717 (1972). "The moment we add a requirement to the statute that the arresting officer make a verbal explanation and interpretation of the rights of an arrested person under the implied consent law, others will contend that the officer's explanation served to obfuscate rather than elucidate." *Massaro v. Dolan,* 535 P2d 1135, 1136 (1975). For this reason alone, I do not think it is wise to require an arresting officer to make any comments concerning a drunk driving suspect's legal rights outside the requirements legislatively prescribed under Georgia's Implied Consent law. Further, I do not believe the defendant in the case sub judice was misinformed and thereby unlawfully coerced into submitting to a state-administered test for the presence of alcohol in his blood. On the contrary, it is my view that the general admonition Officer Saunders gave defendant was an accurate statement of law which not only apprised defendant that his driving privileges would be revoked in Georgia, but also placed defendant on notice that his driving privileges would be revoked or suspended to the furthest extent provided by law. From this perspective, it becomes apparent that the premise projected in the majority opinion (i.e., Georgia has no power to effect suspension of defendant's out-of-state driver's license) is wrong.

OCGA § 40-5-51 (c) requires the Georgia Department of Public Safety to forward a certified copy of the record reflecting revocation of defendant's driving privileges to defendant's home state, North Carolina. North Carolina's Uniform Driver's License Act provides for suspension of the license of any driver who "[h]as committed an offense in another state, which if committed in [the] State [of North Carolina] would be grounds for suspension or revocation. . . ." G. S. § 20-16 (a) (7). Like Georgia, North Carolina's Implied Consent statute provides that "[r]efusal to take any required test or tests will result in an immediate revocation of [a person's] driving privilege. . . ." G. S. § 20-16.2 (a) (2). In my view, the State of Georgia is empowered to effect suspension of defendant's North Carolina

---

[1] This court infers in *Deckard v. State,* 210 Ga. App. 421, 422, supra, that the arresting officer's statutory implied consent warnings would not have been misleading had the defendant (a drunk driving suspect from Tennessee) been informed that his driving privileges would only be suspended on the highways of Georgia. However, this admonition would also have been deficiently misleading since Georgia mandates certification of any such suspension or revocation to a non-resident's home state, OCGA § 40-5-51 (c), and since the defendant's home state in *Deckard* authorizes recognition of driver's license revocations or suspensions from other states upon proper circumstances. Tenn. Code Ann. § 55-50-502 (a) (7). Of course, these facts also demonstrate the frailty of the controlling premise in *Deckard* that Georgia has no power to effect revocation of a non-resident's driver's license.

driver's license and that Officer Saunders' warning to defendant (i.e., "you will lose your privilege to operate a motor vehicle . . . should you refuse to submit to the designated State administered chemical test") was an accurate assessment of Georgia's power to effect suspension of defendant's driver's license. Consequently, I cannot agree with the majority's conclusion that defendant was "misinformed regarding the consequences of his failure to submit to the test, and [that] such misinformation constituted unlawful coercion."

For the foregoing reasons, I would overrule *Deckard v. State*, 210 Ga. App. 421, supra.

I am authorized to state that Presiding Judge Birdsong and Judge Andrews concur in this dissent.

DECIDED MARCH 10, 1995.

*Gerald N. Blaney, Jr., Solicitor, Richard E. Thomas, Jeffrey P. Kwiatkowski, Assistant Solicitors,* for appellant.
*John D. Stone,* for appellee.