A97A2164. ROBERSON v. THE STATE.
(491 SE2d 864)

ELDRIDGE, Judge.

On March 20, 1996, defendant Jay Roberson was stopped for speeding in Murray County while he was driving a tractor-trailer. Roberson holds a commercial motor vehicle driver's license from North Carolina. As the arresting officer was in the process of issuing a Uniform Traffic Citation ("UTC") for speeding, he detected an odor of alcohol on Roberson. He administered an alco-sensor test, and Roberson registered .09 percent. The officer placed Roberson under

arrest for driving under the influence ("DUI") while operating a commercial motor vehicle.[1] Roberson was given the implied consent warnings codified in OCGA § 40-5-67.1 (b) (3). Roberson consented to further alcohol testing and was transported to the Murray County Sheriff's Department, where an Intoxilizer breath test was performed. The test registered a reading of .08 percent. Roberson was issued a UTC for operating a commercial motor vehicle while under the influence of alcohol.

Roberson filed a motion in limine to exclude the results of the Intoxilyzer test, asserting several grounds for exclusion. The trial court originally granted the motion in limine, but then denied it following the State's motion for reconsideration. On May 21, 1997, Roberson was convicted of speeding and DUI in a non-jury trial. This appeal follows.

1. In his first enumeration of error, Roberson asserts that he was misinformed by the arresting officer about the consequences of his refusal to submit to the Intoxilyzer test, so that the trial court should have excluded the test results as evidence at trial. There is no dispute that Roberson was given the implied consent notice codified in OCGA § 40-5-67.1 (b) (3) in its entirety. OCGA § 40-5-67.1 (b) (3) reads in relevant part: "If you refuse this testing, you will be disqualified from operating a commercial motor vehicle for a minimum period of one year." The issue is whether this warning is a correct statement of the consequences for a refusal to submit to alcohol testing.

Roberson asserts that this Court's holding in *State v. Coleman*, 216 Ga. App. 598 (455 SE2d 604) (1995), is dispositive on this issue. We disagree, as *Coleman* involved a defendant with a standard driver's license issued by another state, not a commercial driver's license, and therein lies the critical difference which distinguishes this case.

In *Coleman*, the defendant, who had an out-of-state driver's license, was stopped for DUI. The arresting officer read the defendant an implied consent warning which stated, in part: "Under OCGA § 40-5-55 and 40-5-153, you will lose your privilege to operate a motor vehicle from six to twelve months should you refuse to submit to the designated State administered chemical test." Id. at 599. The trial court granted the defendant's motion in limine to exclude the results of his DUI breath test, finding that the warning was inaccurate, constituted "unlawful coercion," and deprived the defendant of making an informed choice about whether or not to submit to the

---

[1] "A person shall not drive or be in actual physical control of any moving commercial motor vehicle while there is 0.04 percent or more by weight of alcohol in such person's blood, breath, or urine." OCGA § 40-6-391 (i).

DUI test. Id. "Georgia is without authority to revoke or suspend a non-resident's [motorist] driver's license; it may revoke or suspend only the non-resident's privilege of driving a motor vehicle *on the highways of this state*." (Emphasis in original.) Id. This Court opined that the State's implied consent warnings should include the limiting language "at least on the highways of this state." Id.

During the 1995 legislative session, the Georgia Legislature codified mandatory informed consent language, providing specific warnings for three different classifications of drivers: drivers under the age of 18; drivers over the age of 18; and drivers of commercial vehicles. Ga. L. 1995, p. 1160, §§ 1-3. Each warning was "tailored to the particular driver's specific liability under the law," i.e., specifying prohibited blood alcohol levels according to the status of the driver. Legislative Review, 12 G.S.U. L. Rev. 289, 292 (Oct. 1995); see OCGA §§ 40-6-391 (a), (i), (k); 40-6-392 (b), (c). The statute was amended in 1997 to substitute the age of 21 for the age of 18. OCGA § 40-5-67.1 (b).

At the time of Roberson's arrest, the informed consent warnings for drivers of non-commercial vehicles contained the following sentence: "If you refuse this testing, your Georgia driver's license or *privilege to drive on the highways of this state* will be suspended for a minimum period of one year." (Emphasis supplied.) OCGA § 40-5-67.1 (b) (1), (2). Clearly, the Georgia Legislature intended to codify the language recommended by this Court in *Coleman*, supra. Notably, however, no such language appears in the notice for commercial vehicle drivers; the relevant part of the statute states as follows: "If you refuse this testing, you will be disqualified from operating a commercial motor vehicle for a minimum period of one year."[2] OCGA § 40-5-67.1 (b) (3); see also OCGA §§ 40-5-151 (a) (2); 40-5-153 (c). This is the exact language read to the appellant at the time of his arrest.

Based on the legislature's intentional omission of limiting language in subsection (b) (3), they clearly and correctly recognized that the *Coleman*, supra, analysis does not apply to commercial vehicle driver's licenses. Further, they recognized the effect of federal legislation that *mandates*, as a direct consequence of Georgia's disqualification of errant commercial drivers, a disqualification of commercial driving privileges for at least one year, not only in Georgia, but in the *entire* United States.

In 1989, the Georgia Legislature enacted the Uniform Commercial Driver's License Act ("Georgia Act"), OCGA § 40-5-140 et seq., in

---

[2] The statute also states that "[i]f the results indicate an alcohol concentration of 0.04 grams or more, you will be disqualified from operating a commercial motor vehicle for a minimum period of one year." OCGA § 40-5-67.1 (b) (3).

order to implement the mandatory provisions of the federal Commercial Motor Vehicle Safety Act of 1986 ("Federal Act").[3] OCGA § 40-5-141. The Georgia Act states that it "shall be liberally construed to promote the public health, safety, and welfare." OCGA § 40-5-141.

The Federal Act provides that any person holding a commercial driver's license ("licensee") who "violates a State or local law relating to motor vehicle traffic control (other than a parking violation) in any other State *shall notify*" an official in the state which issued the commercial driver's license ("issuing state") and the licensee's employer. (Emphasis supplied.) 49 USC App. § 2702 (a) (1). Further, the Federal Act requires that a licensee who *"loses the right to operate* a commercial motor vehicle in a State for any period, or who is *disqualified from operating* a commercial vehicle for any period *shall notify* his or her employer of such . . . lost right, or disqualification, within 30 days." (Emphasis supplied.) 49 USC App. § 2702 (b).

The Federal Act then states that "no employer shall knowingly allow, permit, or authorize an employee to operate a commercial motor vehicle in the United States during any period . . . in which such employee has a driver's license suspended, revoked, or cancelled by a State, has lost the right to operate a commercial motor vehicle in a State, or has been disqualified from operating a commercial motor vehicle[.]" 49 USC App. § 2703 (1).[4]

As such, under the mandatory provisions of the Federal Act, Georgia's disqualification of a driver from operating a commercial motor vehicle, based on his or her refusal to submit to alcohol testing, in fact *does disqualify* the driver from driving anywhere in the United States for at least one year. Therefore, Georgia's informed consent statute is an accurate statement of the consequences of refusing such testing. Far from being coercive, as Roberson asserts, the warning gives sufficient information for drivers of commercial vehicles to make truly *informed* decisions about whether to submit to testing and the impact of that decision on their careers. The more objectionable alternative is to minimize the consequences of the driver's refusal, only to surprise the driver later with an unanticipated mandatory disqualification. See *Coleman*, supra at 601, n. 1 (McMurray, P. J., dissenting) (noting that a more limited warning would have been "deficiently misleading").

---

[3] 49 USC App. § 2701 et seq., Pub. L. 99-570, Title XII. See also *Bowman v. Knight*, 263 Ga. 222, n. 1 (430 SE2d 582) (1993).

[4] The Federal Act also mandates that *both* the United States' Secretary of Transportation *and* the issuing state *"shall disqualify* from operating a commercial motor vehicle for a period of not less than 1 year each person . . . who is found to have committed a first violation . . . of driving a commercial motor vehicle while under the influence of alcohol[.]" (Emphasis supplied.) 49 USC App. §§ 2707 (a) (1) (A) (i) (I); 2708 (a) (15) (A) (i). Subsequent offenses are addressed in 49 USC App. §§ 2707 (a) (2) and 2708 (a) (16).

There was no error in the trial court's denial of Roberson's motion in limine on this basis.

2. Roberson next contends that he was given misleading information which deprived him of the ability to decide whether or not to secure an independent chemical analysis at the time of his arrest. Roberson specifically asserts that the arresting officer told him that "if you want an independent test, by law, I have to take you to get one . . . (but) I would recommend you not doing it. It would record a little bit higher." Roberson also asserts that the officer who administered the Intoxilyzer test told him the same thing. However, both officers denied making statements of that nature to Roberson. It is the duty of the factfinder, not this Court, to judge the credibility of the witnesses. See OCGA § 24-9-80. We will not disturb the trial court's decision to believe the officers' testimony over that of Roberson. There was no error in the trial court's denial of Roberson's motion in limine.

3. Finally, Roberson asserts that no evidence was presented that the Intoxilyzer utilized by the State met the standards required by OCGA § 40-6-392. This assertion was first presented in Roberson's motion in limine, along with the contention addressed in Division 2, supra. However, this issue was never addressed during the hearing on the motion in limine, during which Roberson raised the issue in Division 1, supra, for the first time. Following the hearing, the trial court granted appellant's motion in limine. The State moved for the court's reconsideration, and Roberson responded by asserting the issues in Divisions 1 and 2, supra; he apparently abandoned the issue underlying this enumeration. The trial court then reconsidered and denied the motion in limine. Roberson did not raise the issue regarding the requirements of OCGA § 40-6-392 until *after* the evidence had been admitted and presented to the trial court; he attempted to revive the issue during his argument on his motion for a directed verdict of acquittal.

We find that Roberson waived his right to appeal this issue. "It is well settled that no issue is presented for appellate review regarding a question of evidence admissibility as to which the trial court was not called to rule upon at trial. [Cits.] Moreover, [defendant] by his own trial tactics and procedures failed to present the issue in proper form for a definitive ruling by the trial court and, additionally, lulled the trial court into issuing no ruling on this issue. A party cannot reap the benefit of any error caused or aided by his own trial tactics, procedure or conduct. [Cit.]" *Simms v. State*, 223 Ga. App. 330, 332 (477 SE2d 628) (1996).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 8, 1997.

*Swift, Currie, McGhee & Hiers, Michael C. Cherof*, for appellant.
*Kermit N. McManus, District Attorney, Susan L. Franklin, Assistant District Attorney*, for appellee.