JUSTICE TRIEWEILER
concurring and dissenting.
*68 ¶26 I concur with the majority’s resolution of Issue 2.1 agree that based on the totality of his remarks the Defendant waived his right to counsel.
¶27 I dissent from the majority’s conclusion that the Defendant was not misinformed about the consequences of refusing to submit to testing for the level of alcohol in his blood.
¶28 Simmons was advised in Montana by a Montana law enforcement officer, that if he refused to submit to testing, his driver’s license would be suspended for a minimum of six months and that he would not be eligible for a probationary driver’s license during the suspension or revocation. Neither of these admonitions were correct. Montana had no authority to suspend his license, nor is there evidence that Nevada will suspend it under the circumstances of this case. Simmons was misinformed about the consequences of declining to be tested. I agree with the decision in Deckard v. Georgia (Ga. Ct. App. 1993), 436 S.E.2d 536, that consent based on misinformation is no different than coercion and that evidence obtained as a result of coercion must necessarily be suppressed.
¶29 As applied to a driver licensed in a state other than Montana, the Montana Department of Justice Implied Consent Advisory Form which was read to Simmons is incorrect. It advises an out-of-state driver that refusal to submit to a test for measurement of blood alcohol level will result in seizure and suspension of that person’s license. In fact, Montana has no authority to suspend an out-of-state driver’s license. Section 61-8-402(7), MCA, provides that in the event a nonresident driver refuses to submit to testing that person’s license may be seized, but then must be sent to the licensing authority of that person’s home state. Section 61-5-203, MCA, provides only that a nonresident’s driving privileges within Montana can be suspended. There are no other sanctions provided pursuant to Montana law for refusal of a nonresident driver to submit to blood-alcohol testing.
¶30 The fact that “driver’s license” is broadly defined pursuant to § 61-1-136(3) to include a nonresident’s driving privileges makes no difference under the circumstances. A nonresident driver would not be aware when advised that his or her “driver’s license” will be seized that the investigating officer is actually talking about driving privileges within the State of Montana. This is especially true when the driver is also advised that he or she will not be eligible for a probationary driver’s license during the suspension or revocation. The out-of-state driver is still misled, as a practical matter, and his or her *69 consent is induced by that misimpression of the consequences of refusal. The issue is whether someone who submits or refuses to submit to a test for blood-alcohol level has been misled. It is disingenuous to suggest that the suspect is not misled because of a broad statutory definition of “driver’s license” about which the out-of-state driver knows nothing.
¶31 The majority’s reliance on the dissenting opinion from the intermediate appellate court in the State of Georgia in State v. Coleman (Ga. Ct. App. 1995), 455 S.E.2d 604, is especially troubling. The opinion is poorly reasoned and based on factual assumptions which are not true in this case.
¶32 First, the author of the dissenting opinion in Coleman was concerned that requiring law enforcement officers to correctly advise out-of-state drivers would be an unreasonable burden and require that they engage in “legal speculation.” That is not correct. In fact, the Implied Consent Advisory Form used in Montana from 1991 to 1995 correctly advised out-of-state motorists as follows:
3(b) Upon receipt of the sworn statement [that the motorist refused to take the request test], the Motor Vehicle Division shall suspend your driver’s license and/or driving privilege for 90 days upon a first refusal; or shall revoke your license and/or driving privilege for one (1) year upon a second or subsequent refusal within a five (5) year period. In either case, no provisional or probationary license may be issued.
(c) If you are a nonresident, your privilege to operate a motor vehicle in Montana will be suspended or revoked, and your seized license and a copy of the affidavit will be sent to your home state.
(Emphasis added.)
¶33 The previous Implied Consent Advisory Form was completely accurate, there was nothing about it that made the investigating officer’s job more difficult and it required no “legal speculation.” The former language should still be required if consent is to be honestly and fairly obtained.
¶34 Second, the author of the dissent in Coleman concluded that the out-of-state driver in that case had not been misinformed because the driver’s home state, North Carolina, would have suspended his license upon notification from the State of Georgia. There is no evidence in this record that Simmons’ home state, Nevada, would have similarly suspended his license for refusal to submit to a *70 blood-alcohol test in Montana. In fact, Simmons contends that Nevada would not have suspended his license.
¶35 Finally, it is inappropriate for the majority to suggest that Montana law does not require an officer to provide information to an arrested motorist regarding the consequences of refusal to submit to a test of his or her blood alcohol level. Nor is it appropriate for the Court to suggest that a driver is not entitled to be informed that he or she may refuse the test. Neither of these issues were presented to the Court in this case. Neither party has briefed either issue. This Court did not vote on that issue when this case was submitted. The language first appeared in the proposed opinion without any prior discussion. It should be noted by those who rely on this Court’s opinions for future guidance that because the two statements have nothing to do with the ultimate issues in this case, they are pure dicta.
¶36 For these reasons, I concur with the majority’s disposition of Issue 2 and dissent from the majority’s resolution of Issue 1.