IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. GIFFORD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TYRONE D. GIFFORD, APPELLANT.

Filed May 10, 2016.    No. A-15-492.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

INBODY, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Tyrone D. Gifford appeals from his conviction for driving under the influence, with refusal of chemical test (2 prior convictions). On appeal, he argues that the district court of Lancaster County erred in overruling his motion to suppress his refusal of a chemical test because the circumstances of the test violated his due process rights. We disagree and accordingly affirm the judgment of the district court.

### BACKGROUND

In April 2014 at approximately 4 a.m., an officer with the Lincoln Police Department stopped Gifford for operating a vehicle in excess of the posted speed limit. When the officer approached the driver's side of the vehicle, he detected a strong odor of alcohol and noted that Gifford spoke with slurred speech and had bloodshot and watery eyes. The officer directed Gifford

to perform field sobriety tests, which demonstrated impairment. At this point, the officer escorted Gifford to his patrol vehicle where he read a preliminary breath test advisement.

While in the patrol car, before the preliminary breath test, Gifford began begging the officer not to take him to jail. The officer replied that he had not yet looked at Gifford's record, and that if he did not have to take him to jail, he would not. When the officer requested that Gifford blow into the preliminary breath test device, Gifford asked if the officer was taking him to jail whether or not he complied. The officer replied that Gifford did not want to receive a refusal charge on top of the DUI, and that if the officer did not have to take Gifford to jail and could take him to "Detox" instead, he would.

Gifford's preliminary breath test revealed a 0.183 blood alcohol content. The officer informed Gifford that he "blew a [0.]183. That's aggravated, dude. That's way over a .08." Gifford continued asking the officer to give him a break or let him go without taking him to "Detox." The officer reiterated that if he could take him to "Detox" he would, but "if it's a felony, we can't."

After receiving information on Gifford's prior convictions, the officer addressed Gifford, saying, "Hey, look at this. It says second offense, DUI, found guilty. That makes this your third offense, aggravated. That's an automatic felony." Gifford replied, "So what are you saying?" The officer stated "that means we have to go to jail." As the patrol vehicle began to transport Gifford to the station, Gifford continued begging, crying, and name-dropping in an attempt to persuade the officer that he did not have to take Gifford to jail. The officer reiterated that on a felony DUI, he was required to take the offender to jail. The officer later modified the "automatic felony" comment by saying that the "citation will be for third offense, aggravated DUI. It will depend on what happens in court, on whether that's what you get charged with."

At the station, the officer read Gifford his *Miranda* rights and a post-arrest chemical test advisement. The chemical test advisement stated that refusing to submit to the test is a separate crime. Gifford refused the chemical test. The officer advised Gifford that he would receive an additional citation for refusing the test. Gifford continued to refuse the test, saying of the additional citation, "like that matters right now," and threatening that the officer was in trouble because Gifford was well-connected and would complain to the officer's superiors.

The State charged Gifford with DUI with refusal of chemical test (2 prior convictions), a class IIIA felony. Gifford filed a motion to suppress his refusal of the chemical test, arguing that his due process rights were violated by the officer's erroneous statement that Gifford's 0.183 result on the preliminary breath test constituted an "automatic felony."

At a hearing on the motion to suppress, the officer testified that he understood that a felony DUI is based on a result in excess of 0.150 on the chemical test, not the preliminary breath test. He also understood that Gifford could have been charged with a misdemeanor instead of a felony if the chemical test had resulted in a blood alcohol reading of less than 0.150. He conceded that he did not inform Gifford that the chemical test could result in a misdemeanor charge if the result was lower.

Gifford testified that after hearing the "automatic felony" comment, he felt that it was not going to matter if he took the chemical test or not. Gifford also admitted that he was read the post arrest chemical test advisement, knew he was being asked to take the test, and decided to refuse.

ASSIGNMENTS OF ERROR

Gifford assigns that the district court erred in overruling his motion to suppress.

STANDARD OF REVIEW

The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *State v. Ballew*, 291 Neb. 577, 867 N.W.2d 571 (2015). When issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *Id.*

ANALYSIS

Gifford's only assignment of error is that the district court erred in overruling his motion to suppress his refusal of the chemical breath test. He argues that his motion to suppress should have been granted because, although the officer read the statutory advisement, his additional comment about the preliminary breath test result being an "automatic felony" was misleading and deprived Gifford of due process.

*Implied Consent Statute.*

Nebraska's implied consent statute provides that any person who operates or has actual physical control of a motor vehicle in this state consents to submit to a chemical test of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine upon the request of a peace officer with reasonable grounds to suspect such conduct. Neb. Rev. Stat. § 60-6,197 (Reissue 2010). The officer is required to advise the individual that refusal to submit to such test is a separate crime for which the person may be charged. *Id.*

In this case, Gifford does not argue that the officer violated Nebraska's implied consent statute; rather he claims that the officer's misstatement regarding an "automatic felony" violated his constitutional rights to due process and fundamental fairness.

*Due Process.*

The Nebraska Supreme Court has previously held that a suspect's right to refuse a chemical test is a matter governed purely by statute and that the giving of a sample under § 60-6,197 does not involve a question of involuntariness, want of due process, or self-incrimination. *State v. Turner*, 263 Neb. 896, 644 N.W.2d 147 (2002). In making this determination, the Court relied upon *South Dakota v. Neville*, 459 U.S. 553 (1983), in which the U.S. Supreme Court held that a state could legitimately compel a motorist to submit to a blood alcohol test against his will and that any right to refuse that test is simply "a matter of grace bestowed by the . . . legislature." 459 U.S. at 565. The *Neville* Court also found that using a refusal of a blood alcohol test against a defendant at trial did not violate due process, even if the defendant had received no warning that the refusal may be used against him. *Id.* The Court proposed a scenario where an implicit promise to forego use of evidence would unfairly "trick" the defendant if the evidence were later offered against him at trial, but stated that failure to warn of the consequences of a refusal does not rise to that level. *Id.*

In arguing that the officer here violated Gifford's due process rights, Gifford relies upon cases from other jurisdictions in which an officer gave incorrect or misleading information in addition to reading a statutory advisement. Several of the cases cited by Gifford are distinguishable from the arguments before us because they were decided under another state's more protective implied consent statute, and they do not consider due process implications. See *Wallace v. State*, 325 Ga. App. 142, 751 S.E.2d 887 (2013); *State v. Terry*, 236 Ga. App. 248, 511 S.E.2d 608 (1999); *State v. Coleman*, 216 Ga. App. 598, 598, 455 S.E.2d 604, 604 (1995).

Gifford also relies upon *State v. Stade*, 683 A.2d 164 (Me. 1996), in which the majority of a divided Maine Supreme Judicial Court held that an officer's understatement of a DUI penalty infringed upon the defendant's due process rights and required suppression of the results of a blood alcohol test to which he submitted. However, two of the five justices in *Stade* dissented, relying on U.S. Supreme Court precedent to hold that while "the Due Process Clause's guarantee of fundamental fairness [may exclude] evidence and overturn convictions when the challenged governmental conduct is so contrary to the law of the land that it 'offend[s] those canons of decency and fairness which express the notions of justice of English-speaking peoples'", the officer's incorrect legal advice in this case fell far short of "the type of misconduct that so chokes the sensibilities of civilized society as to necessitate exclusion of the evidence." *State v. Stade*, 683 A.2d 164, 169-70 (Me. 1996) (Lipez, Justice, dissenting)(internal citations omitted).

In the case before us, following Gifford's pleas to let him go, give him a break, or take him to "Detox" instead of to jail, the officer cited the preliminary breath test result of 0.183 as an "automatic felony" on third offense, as a reason that he could not release Gifford or take him to "Detox." Although this statement was inaccurate because blood alcohol content must be determined by the chemical test and not the preliminary test, the record does not show that the officer was attempting to mislead Gifford or "trick" him into taking or not taking the chemical test. The record demonstrates that the officer attempted to persuade Gifford to comply with the chemical test while Gifford was hostile and verbally abusive. Further, the officer properly informed Gifford that refusal to submit to the chemical test was a separate crime for which he could be charged, so even if Gifford incorrectly believed that his chemical test result would make no difference to his DUI charges because of the preliminary breath test result, he was informed that submitting to the chemical test was in his interest because refusal was a separate crime.

Given the Nebraska Supreme Court's prior determination that a refusal of a chemical test generally does not implicate due process rights, we conclude that due process does not require Gifford's refusal of the chemical test here to be suppressed. See *State v. Turner*, 263 Neb. 896, 644 N.W.2d 147 (2002). Just as the officers' failure to warn in *South Dakota v. Neville, supra*, did not trick the defendant into compliance with chemical testing, neither did the officer's erroneous statement trick Gifford into non-compliance. In neither situation did the officers' conduct violate fundamental fairness guaranteed by Due Process. Therefore, we affirm the district court's order denying Gifford's motion to suppress.

CONCLUSION

Finding no error by the trial court, we affirm.

AFFIRMED.

- 4 -