### 74644. WHITTINGTON v. THE STATE.
(361 SE2d 211)

CARLEY, Judge.

Appellant was tried before a jury on a four-count indictment, and verdicts of guilty were returned on all four counts. Appellant was granted a new trial as to two of the counts, but his motion for a new trial was denied as to the counts which charged him with driving under the influence and with driving although his license had been suspended as an habitual violator. Appellant appeals from the judg-

ments of conviction and sentences entered on the jury verdicts as to those two counts.

1. Appellant asserts that, in reviewing the general ground of his motion for new trial, the trial court applied an erroneous standard of "any evidence." However, the record does not support this contention. It reveals no reference to the standard employed by the trial court in denying appellant's motion for new trial on the general grounds. It is presumed that the trial court applied the correct standard and our own review shows that the general grounds are without merit. After reviewing the entire record, we find that a rational trior of fact could have found appellant guilty, beyond a reasonable doubt, of being an habitual violator and of driving under the influence. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court's admission into evidence of the results of appellant's intoximeter test is enumerated as error. The contention is that appellant was coerced into submitting to the test, as he was informed that his refusal to do so would result in the suspension of his driver's license for a period of "six to twelve months." Under the provisions of OCGA § 40-5-63 (b), as it existed at the time of appellant's arrest, "[a]ny suspension made pursuant to Code Section 40-5-55 shall be for six months; provided, however, that, where a person who has refused to submit to a test or tests provided for in Code Section 40-5-55 has been charged with homicide by a vehicle as provided in Code Section 40-6-393, the suspension shall be for 12 months." As there were no fatalities resulting from appellant's alleged intoxicated driving, he urges that it was impermissibly deceptive for the officer to inform him that, if he refused to submit to the State-administered test, his license could be suspended for more than six months.

"In Georgia, the [S]tate may constitutionally take a blood sample from a defendant without his consent. [Cit.] Our 'Implied Consent Statute' (OCGA § 40-5-55) thus grants a suspect an opportunity, not afforded him by our constitution, to refuse to take a blood-alcohol test. OCGA § 40-6-392 and OCGA § 40-5-55 grant, rather than deny, a right to a defendant." *Allen v. State*, 254 Ga. 433, 434 (1a) (330 SE2d 588) (1985). "OCGA § 40-5-55 creates the right to refuse. OCGA § 40-6-392 defines the right." *Allen v. State*, supra at 434 (1a), fn. 1. Subsection (a) (4) of OCGA § 40-6-392, the statute which defines the right to refuse to submit to a State-administered test, merely provides that "[t]he arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code Section." Thus, our "Implied Consent Statute" only requires that the arrestee be informed of his right to an additional test. There is neither a statutory nor a constitutional requirement that the arresting officer inform the arrestee of the consequences of the refusal to submit to the State-administered test. See *South Dakota v. Neville*,

459 U. S. 553 (103 SC 916, 74 LE2d 748) (1983). However, a warning to an arrestee of the legitimate consequences of his refusal to submit to a State-administered test is neither constitutionally nor statutorily prohibited. The State is authorized to create such consequences as a means of lawfully inducing an arrestee into choosing his option of submitting to a State-administered test. See *South Dakota v. Neville*, supra. " '[T]he State wants [the arrestee] to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test.' [Cit.]" *Wessels v. State*, 169 Ga. App. 246, 247 (1) (312 SE2d 361) (1983). See also *Sorrow v. State*, 178 Ga. App. 83 (342 SE2d 20) (1986). Accordingly, by informing the arrestee of the legitimate consequences of his refusal to submit to the State-administered test, the arresting officer is engaging in an act of lawful inducement. Thus, the issue presented for resolution is whether, under the circumstances of this case, the arresting officer unlawfully coerced appellant's election to submit to the State-administered test by informing him that his refusal could result in a suspension of his driver's license for a period greater than six months or whether the arresting officer legally induced that election notwithstanding the non-fatal consequences of appellant's act.

OCGA § 40-6-392 (a) (4) mandates that the arrestee be advised of his right to alternative testing *at the time of arrest*. Our Supreme Court has held that " '(t)his [directive] cannot be interpreted to mean sometime in the future. . . .' [Cit.]" *Perano v. State*, 250 Ga. 704, 707 (300 SE2d 668) (1983). Since the statute requires that the arrestee be informed of his right to additional testing at the point of his arrest, it follows that any other warnings or notifications purportedly given to induce his submission to the State-administered test are also to be made at that time and are to be considered from the perspective of such circumstances as then existed. However, at the point of arrest, it is not always possible for a law officer to know whether the arrestee will ultimately be charged with violating OCGA § 40-6-393 and thus whether the arrestee will ultimately face suspension of his license for twelve rather than for six months upon his refusal to take the State-administered test. This would be especially true where, as in the present case, the arrest is incident to the investigation of a vehicular collision. Even where the arrest is made merely for impaired driving which, to the officer's current knowledge, has yet to result in a physical injury, it is entirely possible that the arrestee may well have been involved in a prior incident, such as hit and run, of which the officer is yet unaware. Thus, it would be unreasonable to require that a police officer determine, at the point of each DUI arrest, whether or not the arrestee might ultimately be charged under OCGA § 40-6-393 and to require that the officer tailor his warnings accordingly. The prob-

lem is compounded by passage of the 1987 amendment to OCGA § 40-5-63 (b), whereby persons charged with violating OCGA § 40-6-394 are now included among those who will be subject to a twelve-month suspension for refusal to submit to the State-administered test.

Accordingly, we hold that evidence merely that the officer informed the arrestee that the consequences of his refusal to submit to a State-administered test could be suspension of his driver's license for a period of "six to twelve months" in no way suggests "that the officer purposely attempted to mislead the [arrestee]." *Sorrow v. State*, supra at 84. There is no unlawful coercion of the arrestee's submission to the State-administered test as the result of the officer's imparting of such information, merely lawful inducement by the officer's informing him of the permissible range of sanctions that the State may ultimately in fact be authorized to impose should he refuse to submit. The trial court correctly admitted the results of appellant's blood-alcohol test into evidence.

3. The admission into evidence of certain testimony is enumerated as error. However, at trial there was no timely objection or motion to strike the testimony. " 'It is a well settled rule in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection.' [Cits.]" *Skinner v. State*, 155 Ga. App. 754, 755 (272 SE2d 570) (1980).

4. The trial court charged the jury that a guilty verdict would be authorized if it should find, beyond a reasonable doubt, that appellant had committed the offenses *at any time* within the applicable statute of limitations. Appellant, who had advanced an alibi defense, enumerates the giving of this charge as error.

"The instruction is a correct statement of a general principle of law. 'Where the date alleged in the indictment is not a material element of the offense, the [S]tate may prove the offense as of any date within the statute of limitation. [Cits.]' [Cit.] The principle is applicable even though the defense is alibi. [Cit.] Yet, it has also been recognized that, as a jury instruction, the legal principle is 'potentially confusing in light of (the) alibi defense. [Cit.]' [Cit.] 'We have also held, however, that unless time is of the essence of the crime or is expressly made material, such an instruction is not grounds for reversal so long as the requirements set forth in *De Palma v. State*, 225 Ga. 465 (169 SE2d 801) (1969) are fulfilled. . . .' [Cit.] Those requirements were fulfilled in the case at bar." *McCoy v. State*, 174 Ga. App. 621, 622-623 (2) (330 SE2d 746) (1985). See also *Brannon v. State*, 176 Ga. App. 781, 782 (4) (337 SE2d 782) (1985).

Appellant further enumerates as error the trial court's failure to grant a continuance for the purpose of preparing a defense to meet the State's evidence that the alleged violations had occurred on a date which differed from the date specified in the indictment. However,

appellant made no motion for a continuance. He only made various motions to dismiss the indictment, for mistrial, and for a directed verdict of acquittal. "[T]he instant variance should have been complained of by an appropriate motion for time to prepare a defense to meet the new date. [Cits.] We hold that the trial court did not err in denying the motion for directed verdict of acquittal, and that the time variance involved here cannot be reached by such motion or by the usual general grounds. While it would have been preferable for the trial court, sua sponte, to make an offer of additional time in which to attempt to establish an alibi defense for the different date, we will not hold that he was compelled to do so." *Caldwell v. State*, 139 Ga. App. 279, 290-291 (228 SE2d 219) (1976). See also *Haygood v. State*, 172 Ga. App. 271, 273 (2) (322 SE2d 513) (1984); *Frymyer v. State*, 179 Ga. App. 391 (2) (346 SE2d 573) (1986).

5. Remaining enumerations of error have been considered, but have been found to be without merit.

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 11, 1987 —
REHEARING DENIED SEPTEMBER 23, 1987.

*Michael P. Katz, Virgil L. Brown*, for appellant.
*William J. Smith, District Attorney, Michael D. Reynolds, Assistant District Attorney*, for appellee.