A93A1488. DECKARD v. THE STATE.

(436 SE2d 536)

BEASLEY, Presiding Judge.

Deckard was charged by accusation with driving under the influence of alcohol, OCGA § 40-6-391 (a) (1), and driving with an unlawful alcohol concentration, OCGA § 40-6-391 (a) (4). The interlocutory review challenges the order denying a motion in limine[1] which seeks to exclude from evidence at trial the results of a State-administered chemical breath test. Deckard contends that the State improperly obtained his consent to the test because the investigating officer misinformed him that his refusal would result in a six-month suspension of his out-of-state driver's license, a penalty which the State was unauthorized to carry out. The test results should have been excluded from evidence.

A DeKalb County police officer on patrol on October 17, 1992, observed Deckard's vehicle speeding and having difficulty staying within his lane of traffic. After initiating a traffic stop, the officer detected a "moderate odor of alcoholic beverage on or about his person." Upon request, Deckard produced a valid driver's license issued by the State of Tennessee. When he was unable to successfully perform a series of field sobriety tests, he was arrested, secured in the patrol car and notified of his rights under the Implied Consent Statute, OCGA § 40-5-55, as follows: "Georgia Code 40-5-55 requires you to submit to state administered chemical tests of your blood, breath, urine or other bodily substance for the purpose of determining alcoholic drug content. Under Georgia Code 40-6-392 you have the right to an additional test of the foregoing substances made by personnel of your own choosing if you so desire. This additional test in no way satisfies your obligation to submit [to] state administered tests. Should you refuse my request that you submit to a state administered test, your driver's license will be suspended for six months."

According to the officer, appellant verbally indicated his understanding of the consent notice and initialed and signed a form confirming that understanding and agreeing to take the requested test. He declined a second test.

---

[1] Although the motion was styled "motion to suppress/motion in limine," the appropriate motion to exclude the test results is a motion in limine. *State v. Johnston,* 249 Ga. 413, 414 (3) (291 SE2d 543) (1982); *Smith v. State,* 185 Ga. App. 531 (2) (364 SE2d 907) (1988).

Deckard was misinformed as to the consequences of his failure to submit to chemical analysis because the Georgia Department of Public Safety is without authority to absolutely suspend or revoke a nonresident's driver's license. OCGA § 40-5-51 (a) provides that as to a nonresident driver of a motor vehicle, Georgia may suspend or revoke only the "privilege of driving a motor vehicle on the highways of this state . . . in like manner and for like cause as a driver's license issued under this chapter may be suspended or revoked." Id.

We note that effective January 1, 1993, the implied consent notice read to suspected DUI offenders was amended to include: "If you are a non-resident, Georgia is only authorized to suspend your privilege to operate a motor vehicle in the State of Georgia." The language was apparently added to conform with the enactment of OCGA § 40-5-67.1 (d), Ga. L. 1992, p. 2564, § 6, effective January 1, 1993, which provides that the failure of a nonresident DUI arrestee to submit to chemical testing for the purpose of detecting the presence of alcohol will result in the suspension of that person's "nonresident operating privilege for a period of one year. . . ."

In *Beasley v. State*, 204 Ga. App. 214 (1) (419 SE2d 92) (1992), defendant was asked by police to submit to urine testing to detect the presence of illegal drugs and was told that the test results would be used as a consideration in setting bond. Defendant consented and tested positive for cocaine. As a consequence, his bail was increased and he was also charged with possession of cocaine. This court reversed the denial of a motion to suppress the test results finding that defendant's consent was not voluntary because it was "premised on the incomplete and thus deceptively misleading information," id. at 216, received from police concerning the purpose for which the results would be used.

In *Sorrow v. State*, 178 Ga. App. 83 (342 SE2d 20) (1986), a DUI arrestee was informed of his rights under the Implied Consent Statute and initially agreed to be tested but then declined when informed by police that his provisional license had been revoked. It was subsequently determined that his license was valid. It was held that evidence of his refusal to submit to testing was properly introduced at trial because defendant was correctly informed of the statutory options, and the mistake, which was an honest one, "had nothing to do with the defendant's options under the Implied Consent Statute." Id. at 84.

In *Whittington v. State*, 184 Ga. App. 282 (2) (361 SE2d 211) (1987), a DUI suspect was informed that his refusal to submit to intoximeter testing would result in the suspension of his driver's license for six to twelve months, a range of sanctions permissible by law. The court held that the State is not required to warn an arrestee of the legitimate consequences of his refusal to submit to a State-adminis-

tered test, but if such information is given, it must be correct so as not to mislead. "[B]y informing the arrestee of the legitimate consequences of his refusal to submit to the State-administered test, the arresting officer is engaging in an act of lawful inducement." Id. at 284. If misinformation is given, it may constitute unlawful coercion. This did.

The State argues that the notice given to Deckard contained no false or misleading information and that it *implied* a proper statement of the law, i.e., only his privilege to drive in Georgia would be suspended for refusal to submit. Neither contention is borne out by the record. Unlike *Whittington*, supra, Deckard was not informed of the "legitimate consequences" of his refusal to submit to testing. Id. at 284. And, although we find no suggestion that the officer *intentionally* misinformed Deckard concerning the penalty for refusal, compare *Beasley*, supra, we cannot conclude that his misstatement of the law did not induce the consent. It directly impacted Deckard's options under the Implied Consent Statute. Compare *Sorrow*, supra.

One who operates a motor vehicle on the highways of this State is deemed to have given consent, subject to the requirements of OCGA § 40-6-392, to chemical testing of a bodily substance to determine the presence of alcohol or any other drug. OCGA § 40-5-55 (a). Although consent is implied, before test results may be admitted into evidence the State must satisfy the burden of showing that the method of testing had been approved by the GBI's Division of Forensic Sciences, that the operator was properly licensed, and that the accused had been advised of his rights under the Implied Consent Statute. *Turrentine v. State*, 176 Ga. App. 145 (1) (335 SE2d 630) (1985); *Swearingen v. State*, 205 Ga. App. 748 (1) (423 SE2d 305) (1992).

Since the consent was based at least in part on deceptively misleading information concerning a penalty for refusal, which the State was unauthorized to implement, Deckard was deprived of making an informed choice under the Implied Consent Statute. Accordingly, the test results were rendered inadmissible.

The State did not show that the consent implied by law was in fact voluntary in this instance.

*Judgment reversed. Cooper and Smith, JJ., concur.*

DECIDED SEPTEMBER 29, 1993.

*King & King & Jones, David H. Jones, John C. Leggett*, for appellant.

*Ralph T. Bowden, Jr., Solicitor, Eleanor A. Kornahrens, W. Cliff*

*Howard, Assistant Solicitors*, for appellee.