A94A0499. THE STATE v. LEVINER.
(443 SE2d 688)

BIRDSONG, Presiding Judge.

The State appeals from the order of the trial court sustaining appellee/defendant Michael R. Leviner's motion in limine and motion to exclude in this DUI case. *Held:*

1. A motion in limine is closely related to a motion to suppress. Ga. Crim. Trial Prac. (1993 ed.), § 14-52. The same appellate rules as to factfinding and witness credibility determination apply in both types of hearings. " ' " 'Factual and credibility determinations made by a trial judge after a suppression hearing [or a motion in limine hearing to exclude evidence] are accepted by appellate courts unless clearly erroneous.' " ' " *Baldwin v. State*, 263 Ga. 524, 525 (1) (435 SE2d 926).

2. Appellee refused to submit to a urine test. The State contends

the trial court erred in holding that a motorist has a right to refuse to submit to the State-administered chemical tests under the implied consent law.

"[T]he use of a substance naturally excreted by the human body does not violate a defendant's right against self-incrimination under the Georgia Constitution [Ga. Const. of 1983, Art. I, Sec. I, Par. XVI]." *Green v. State*, 260 Ga. 625, 627 (2) (398 SE2d 360), citing and adopting with modification, *Robinson v. State*, 180 Ga. App. 43 (3) (348 SE2d 662). Thus, although the Georgia Constitution provides more protection for its citizens against self-incrimination than does the United States Constitution, appellee would have neither a claim of constitutional right nor a claim of privilege against self-incrimination from the evidentiary use of his urine (at least, when such sample is obtained by the State in a manner not constitutionally shocking to the conscience). See *Robinson.* Any "right of refusal" appellee could claim therefore would have to be grounded upon statute or case law. Examining OCGA §§ 40-5-55; 40-5-67.1 and 40-6-392 in pari materia and so as to give proper effect to their purpose (*Ga. Marble Co. v. Whitlock*, 260 Ga. 350, 354 (1) (d) (392 SE2d 881)), we find that "Georgia law *requires* the person to submit to a test to determine if the person is under the influence of alcohol or other drugs." (Emphasis supplied.) OCGA § 40-5-67.1 (b) (1). Nevertheless, the legislature "has granted a driver the right to refuse to take a State-administered test," *Keenan v. State*, 263 Ga. 569, 571 (436 SE2d 475), subject to a legislative mandate "that evidence of the exercise of that right shall be admissible in the driver's criminal trial. OCGA § 40-6-392 (d)." Id.

The trial court did not err in concluding appellee had a "right of refusal."

3. Appellant asserts the trial court erred in granting appellee's motion in limine as to evidence of his refusal to submit to the chemical test which the State requested he take. The trial court found as fact (and there exists evidence of record to support these findings) that: appellee was read the implied consent warning from a card provided by the Georgia Department of Public Safety; appellee indicated to the officer he did not understand what the officer had read to him; the officer's only subsequent explanation was that appellee could lose his driver's license if he did not submit to the test; appellee was transported to the local county jail where he refused to take a urine test as requested by the officer pursuant to the implied consent law. The trial court found, inter alia, "as a matter of law and fact" that appellee's refusal to submit to the requested urine test was not a knowing, wilful, and voluntary refusal because appellee "was not properly advised of the implied consent law." The trial court also found that "the motorist . . . has a right to refuse to submit to the State-administered test," and in effect concluded that the version of

the implied consent law read to the defendant was misleading to the point of inadequately complying with the existing implied consent law. The court granted appellee's motion in limine, precluding the admission of evidence that implied consent warnings had been read to appellee and that appellee refused to submit to the requested urine test. In its appeal, "the State does not contest that the warnings read to the appellee contained inapplicable and irrelevant information. Instead, the State contends that the arresting officer is under no duty to give any implied consent warnings, and, even if such a duty existed, there is no requirement that the warnings be comprehensible."

(a) We reject the State's argument that we should "ignore the additional protections provided by OCGA § 40-5-67.1 and continue to apply only the earlier implied consent law found in OCGA § 40-6-392." Contrary to the State's contention, "in constructing the statute so as to give effect to the legislative intent a mere segment of the statute should not be lifted out of context and construed without consideration of all the other parts of the statute." *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81). This statute, when examined in context and in its totality (*Bibb County v. Hancock*, 211 Ga. 429, 440 (2) (86 SE2d 511)) together with OCGA §§ 40-5-55 and 40-6-392 expressly referenced therein (see *Ga. Marble Co.*, supra), reveals that OCGA § 40-5-67.1 (b) was intended by the legislature to require, as of January 1, 1993, additional implied consent notice requirements at the time the law enforcement officer requested the person to submit to a chemical test or tests as required by OCGA § 40-5-55. While this Code section states that a failure to provide effective notice shall not invalidate an administrative driver's license suspension, the legislature has left it for the courts to adjudicate the legal effect of notice failure in a criminal case. *Keenan*, supra, did not address this issue and is distinguishable. To construe OCGA § 40-5-67.1 according to the State's contentions would render a significant portion thereof ineffective.

(b) The State's reliance on *Whittington v. State*, 184 Ga. App. 282 (361 SE2d 211), as precedent that a person's implied consent rights are limited merely to being informed that he or she has a right to an independent test, is misplaced; *Whittington*, supra, and other cases also occurring before OCGA § 40-5-67.1 would take effect, are not dispositive in this case.

(c) We need not resolve any perceived conflict in the cases of this court, under the implied consent laws as currently promulgated, dealing with a failure to advise a nonresident accurately as to the legal effect of his refusal to take a chemical test as to the suspension or revocation of a nonresident driver's license; the trial court did not base its ruling solely on such a failure. Compare *Deckard v. State*, 210 Ga. App. 421 (436 SE2d 536) with *State v. Reich*, 210 Ga. App. 407

(436 SE2d 703). Rather, the trial court concluded: The implied consent card from which appellee was advised of the implied consent law "clearly establishes the *fact* that what was read to the defendant contained misleading, inaccurate and extraneous information. The officer's own testimony revealed the defendant's confusion over what the officer had just read to him. . . . The majority of the text read by the officer was immaterial insofar as this defendant was concerned. . . . The obfuscatory version of the implied consent law read to the defendant rendered meaningless the intent and spirit of the implied consent law." (Emphasis supplied.) Inherent in this ruling is the finding of fact that the implied consent notice given to the appellee in its totality contained substantial misleading, inaccurate, and extraneous information which was immaterial to appellee's situation, and appellee was confused thereby as to his existing implied consent statutory privileges. These findings are supported by some evidence of record and are not clearly erroneous. (The implied consent card, Exh. C-1, has approximately 34 lines of text — not counting the asterisk sentence which was applicable but not read to appellee — and the second sentence thereof contains approximately 253 words and *18* punctuation marks. Apparently, this card has been revised since the date of this incident.) Also distinguishable is *Sorrow v. State*, 178 Ga. App. 83, 84 (342 SE2d 20), where the error committed "had nothing to do with the defendant's options under the [then existing] Implied Consent Statute."

(d) The State argues, however, that because a person must be informed of his implied consent rights, it "does not necessarily require the State prove he understood his rights." *Mitchell v. State*, 174 Ga. App. 594 (330 SE2d 798) is distinguishable factually from this case; moreover, the court observed: "It is true that to be informed it is necessary that the driver understand the import and meaning of the police officer's instructions to him." (Punctuation omitted.) Id. at 596. In *State v. Tosar*, 180 Ga. App. 885 (350 SE2d 811), the officer properly advised the motorist of his implied consent rights, but the motorist could not speak English; the case at bar is distinguishable as the officer did not adequately advise appellee of his rights and appellee could speak English and did not fall within that limited category of people deemed, as a matter of law, not to have revoked their implied consent because of "a condition rendering [such person] incapable of refusal." OCGA § 40-5-55 (b). In *Hunter v. State*, 191 Ga. App. 769 (382 SE2d 679) the primary issue was whether the motorist had refused to take the statutory chemical test after repeatedly being read and allowed to read an apparently adequate advice card; it is not here controlling. In *Longino v. Cofer*, 148 Ga. App. 341 (251 SE2d 113), the primary issue was whether the motorist had refused to take the test, and not the legal effect of an inadequate implied consent advice; this

case is not controlling. Incidentally, in *Longino*, we held: "The hearing officer's factual determination, being supported by any evidence, may not be disturbed on appeal absent some error of law." Id. at 343. Statutory construction must square with common sense and reasoning. *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (i) (418 SE2d 367). To interpret the implied consent statutes as authorizing an implied consent advice so defective, when tested using an *objective standard*, as to deprive the motorist of any opportunity to make an informed choice under the implied consent statute, would violate this and other equally sound principles of statutory construction.

(e) Applying an objective standard, we conclude that, in view of the state of the evidence and the findings of fact by the trial court supported thereby, appellee was deprived by the totality of the inaccurate, misleading, and/or inapplicable information given to him by the arresting officer of making an informed choice under the implied consent statute, and accordingly, the trial court did not err in concluding that appellee's refusal to consent to the urine test was rendered inadmissible. See *Deckard*, supra at 423.

4. The trial court granted appellee's motion to exclude the field sobriety tests holding that his rights under Ga. Const. 1983, Art. I, Sec. I, Par. XVI were violated when he was compelled to give self-incriminating testimony when directed to perform certain field sobriety tests without being informed that the taking of such tests was voluntary. This state constitutional right is embodied in OCGA § 24-9-20. *Harris v. State*, 237 Ga. 718, 728 (7) (230 SE2d 1). The factual determination that appellant was directed to perform these tests is supported by evidence. However, we further find that appellee was not in custody at the time he was required to take the field sobriety tests. "[T]here was no violation of [appellee's] right not to incriminate himself under the fifth amendment, the Georgia Constitution [Art. I, Sec. I, Par. XVI, Ga. Const. of 1983], or OCGA § 24-9-20, because he was not in custody at the time the field sobriety test was administered." *Lankford v. State*, 204 Ga. App. 405, 406 (2) (419 SE2d 498), cert. denied ___ U. S. ___ (113 SC 972, 122 LE2d 127); compare *Keenan*, supra at 571 (2). Thus, the trial court erred in granting the motion to exclude field sobriety test evidence.

*Judgment affirmed in part and reversed in part. Cooper and Blackburn, JJ., concur.*

DECIDED APRIL 19, 1994 —
RECONSIDERATION DENIED MAY 2, 1994 —

*Gerald N. Blaney, Jr., Solicitor, Richard E. Thomas, Gary S. Vey, Assistant Solicitors,* for appellant.

104

*William C. Head,* for appellee.