A97A0940. MORRISSETTE v. THE STATE.
(494 SE2d 8)

SMITH, Judge.

A jury found Todd Allen Morrissette guilty of two counts of DUI, OCGA § 40-6-391 (a) (1), (5), and failure to maintain lane. OCGA § 40-6-48. Morrissette appeals from the judgment of conviction and sentence entered thereon.[1]

The evidence presented at trial showed that Morrissette was driving a sport-utility vehicle with three passengers in the early morning hours. The vehicle flipped over, injuring several of the pas-

---

[1] Morrissette was sentenced on only one of the DUI counts, the violation of OCGA § 40-6-391 (a) (1).

sengers. Officer Dale Nix of the DeKalb County Police Department responded to the accident. When Morrissette stepped forward to identify himself as the driver, Nix detected a strong odor of alcohol. He made a decision then to call another officer "better trained for DUIs." In less than five minutes, Officer John Fox of the Strategic Traffic Accident Reduction (STAR) team of the DeKalb Police Department arrived on the scene. Fox also noticed an odor of alcohol on Morrissette's breath and observed that Morrissette's eyes were bloodshot and glassy and he was unsteady on his feet. While emergency medical technicians treated Morrissette's passengers, who were more severely injured, Fox conducted field sobriety tests on Morrissette, after which Morrissette was treated by the EMTs and released. Fox then placed him in the back of his patrol car and turned his attention to the clearing and removal of the wreck. Fox then advised Morrissette that he was under arrest for DUI, read him his implied consent rights, and transported him to a nearby hospital for a blood alcohol test and further examination for possible injuries. Morrissette's blood alcohol level tested at 0.16 grams.

1. Morrissette contends the trial court erred in admitting evidence of the field sobriety tests.

(a) He first argues that it was error to admit evidence of the field tests because he was in custody at the time and received no *Miranda* warnings.

In *Miranda v. Arizona*, 384 U. S. 436, 478 (86 SC 1602, 16 LE2d 694) (1966), the Supreme Court held that individuals who are "in custody" must be advised of their rights against self-incrimination before they may be interrogated. *Hughes v. State*, 259 Ga. 227, 228 (2) (a) (378 SE2d 853) (1989). But only custodial statements by an accused must be preceded by *Miranda* warnings. *Carroll v. State*, 203 Ga. App. 22, 23 (416 SE2d 354) (1992). Morrissette claims he was "in custody" when the field sobriety tests were performed because he was not free to leave. He argues that Nix placed him in the back of his patrol car to await Fox's arrival.[2] His driver's license was taken. Although he was not handcuffed, the back door handles on Nix's patrol car had been removed, making the doors difficult (although not impossible, according to Fox) to open from the inside. Even had he been able to exit the patrol car, he could not have left the scene. His own vehicle was not driveable, and even if it had been, Morrissette had been in an accident and had a legal obligation to remain at the scene.

Morrissette's argument has no merit. First, field sobriety tests

---

[2] Although Nix testified he did not place Morrissette in the back of his patrol car at all, Fox testified that when he arrived on the scene he found Morrissette in the back seat of Nix's patrol car.

are not "statements." They are "not evidence of a testimonial or communicative nature." They are therefore not inadmissible under the Fifth Amendment to the U. S. Constitution even if the accused was "in custody" and no *Miranda* warnings have been given. *Hughes*, supra at 228 (2) (b).[3]

Second, unlike the situation in *State v. O'Donnell*, 225 Ga. App. 502 (484 SE2d 313) (1997), cited by Morrissette, the record shows that Morrissette was not "in custody."[4] Morrissette was in the back seat of Nix's patrol car "less than five minutes" awaiting Fox's arrival. He was released from the patrol car as soon as Fox arrived. And the fact that Morrissette may have had no apparent *way* of leaving and that he owed a legal duty to remain at the scene for other reasons does not mean he was "in custody" for *Miranda* purposes. "The fact that an officer retains a detainee's license for a short period during the course of an investigation does not necessarily mean that the detainee is in custody, even if at that point, by leaving, the detainee could be arrested for violating State law. [Cit.]" *State v. Pastorini*, 222 Ga. App. 316, 317-318 (1) (474 SE2d 122) (1996). Here, as in *Pastorini*, the detainee's driver's license was taken to enable the officers to proceed with investigating the vehicular accident in which the detainee was involved. A reasonable person would conclude under such circumstances that the detention was only temporary and not the equivalent of a formal arrest. Id.

Although both Nix and Fox strongly suspected from their observation of Morrissette that he was intoxicated and Fox testified that he *could have* arrested Morrissette before doing the field tests, that did not happen until after the field sobriety tests had been completed and the officers' suspicions confirmed. It is clear from the evidence that Morrissette's earlier detention was temporary. See generally *Hughes*, supra at 228 (1). "Such detentions do not trigger the requirements of *Miranda*. [Cit.]" *Coates v. State*, 216 Ga. App. 93, 95 (7) (453 SE2d 35) (1995). The trial court did not err in admitting the results of the field sobriety tests on this ground.

(b) Morrissette also argues that even if no constitutional violation occurred the field sobriety tests should not have been admitted into evidence because Morrissette was injured when he performed the tests and the results were therefore unfairly prejudicial. We do not agree. Even assuming that Morrissette's performance on the tests was influenced by his relatively minor injuries, this would be a

---

[3] Here, as in *Hughes*, Morrissette does not raise OCGA § 24-9-20. His arguments are based solely upon the U. S. Constitution.

[4] In *O'Donnell*, we found that it was "undisputed . . . that defendant *was* under arrest when [the officer] questioned him and had him perform field sobriety tests." Id. at 503-504 (1).

factor affecting the weight the jury should give this evidence; it would not have affected the evidence's admissibility. The decision whether to admit evidence is in the trial court's discretion, and Morrissette has shown no abuse of that discretion in this case. *Hestley v. State*, 216 Ga. App. 573, 576 (2) (455 SE2d 333) (1995).

2. Morrissette next maintains that the results of the State-administered blood alcohol test should have been excluded.

(a) He asserts that the implied consent warnings read to him were "misleading, coercive, deceptive, and misstated the true and legitimate consequences of both the refusal and submittal" to the test. This Court has held that test results are inadmissible when the implied consent warnings given before the test give the advisee "inaccurate, misleading, and/or inapplicable information," thus depriving him of making an informed choice regarding submitting to or refusing the State-administered test. *State v. Leviner*, 213 Ga. App. 99, 103 (3) (e) (443 SE2d 688) (1994). See also *Deckard v. State*, 210 Ga. App. 421, 423 (436 SE2d 536) (1993) (consent based upon "deceptively misleading information concerning a penalty for refusal").

The current statutorily mandated implied consent warnings state that Georgia law requires the advisee to submit to the State-administered chemical test; they then explain the consequences of refusing to so submit. Those consequences include suspension of the advisee's Georgia driver's license *or privilege to drive in Georgia*. OCGA § 40-5-67.1 (b) (2). They are therefore not misleading in the same manner as were the warnings addressed in *Leviner* and *Deckard*. Morrissette relies, however, on Fox's admission that he did not initiate an administrative license suspension by issuing the applicable DPS form 1205 or 1205S and evidence presented that issuance of such form is the only means by which administrative suspension can be effectuated. Morrissette argues that this evidence necessitates the conclusion that the warnings read to him were deceptive or misleading because they misstated the consequences of a potential refusal to submit to the test. This argument is based upon Morrissette's belief that Fox *never* institutes administrative suspension proceedings, and that the warning he reads is therefore misleading in suggesting that license (or privilege) suspension is a possible consequence either of elevated blood alcohol levels or of refusal to submit to the test.

But in regard to submitting to the test, Fox did not advise Morrissette that Morrissette's license *would* be suspended if the results indicated his blood alcohol level was .10 or more; he merely advised that it *"may"* be suspended. This was not deceptive. Although the results indicated that Morrissette's blood alcohol level was greater than .10 his license was not suspended, although it might have been. Morrissette did not refuse to take the test, so the consequences of a refusal are unknown in this case. Had Morrissette refused to take

the test, Fox might well have initiated a license suspension. Moreover, contrary to Morrissette's argument, no evidence was actually presented about Fox's routine practice with regard to refusals. The trial court did not err in denying Morrissette's motion to exclude the results of the State-administered blood test on this ground. The warning read by Fox tracked the language of OCGA § 40-5-67.1 (b), which has been approved by this Court. We find no error.

(b) Relying upon *Perano v. State*, 250 Ga. 704 (300 SE2d 668) (1983), Morrissette also contends that the blood test results should have been excluded because the implied consent warnings were not timely given.

OCGA § 40-6-392 (a) (4) provides that the implied consent warnings must be given "at the time of arrest." In *Perano*, supra, the Supreme Court clarified this language, holding that results of the State-administered test will be inadmissible when the warnings are "not given at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." Id. at 708. In this case, the warnings were read to Morrissette at a time as close in proximity to the time of his arrest as the circumstances warranted, and the results of the blood test were therefore properly admitted.

Morrissette indicated to Fox that he wished to be seen by the emergency medical technicians. After field sobriety tests were administered, Morrissette was treated by the EMTs. He was then placed in Fox's patrol car while Fox finished attending to the wrecker clearing the scene. Fox moved his car and made sure the wrecker would be able to place Morrissette's vehicle upright and tow it. As soon as this was completed, he read the implied consent warnings to Morrissette. Morrissette agreed to take the blood test and Fox transported him to the hospital. Here, as in *Martin v. State*, 211 Ga. App. 561 (440 SE2d 24) (1993), it is clear that the implied consent warnings were not delayed "merely as a matter of convenience for the police." Id. at 562. And here, as in *Martin*, they were given at the scene only minutes after the arrest. After placing Morrissette under arrest and in the back of his patrol car, Fox attended to matters at the scene that were necessary and were part of his duties as a police officer. After attending to Morrissette's injuries and making certain the accident scene was cleared, he read the implied consent warnings at his first practical opportunity. This was within the time permitted under *Perano*. The trial court did not err in finding that the implied consent warnings were timely given.

(c) Morrissette asserts that the blood test results were inadmissible because the State failed to comply with OCGA § 40-6-392 in that the chemical test was not performed on a machine with all of its parts attached and in good working order. He is referring in this enu-

meration to the gas chromatograph used by Dr. Robert Brown, the forensic chemist employed by the GBI, to analyze the blood sample. Although it is true that Dr. Brown did not know the internal workings of the machine and probably was not qualified to repair it, he did not need to do so. Dr. Brown testified that he had been trained to operate the machine properly. He is able to discern whether the machine is actually working properly because he calibrates it and tests it by running samples of known concentration to verify the results. He did so before analyzing the sample of Morrissette's blood to ensure that "the instrument is running correctly and that it is giving you the correct analytical results." Nothing more is required. *Bazemore v. State*, 225 Ga. App. 741, 743-745 (2) (484 SE2d 673) (1997).

3. Morrissette complains of the trial court's failure to give two of his requested jury charges.

(a) Morrissette was charged both with being a less safe driver, OCGA § 40-6-391 (a) (1), and with having a blood alcohol concentration greater than 0.1. OCGA § 40-6-391 (a) (5). He requested two charges that, according to Morrissette, purported to explain how the "per se" count of DUI meshed with the "less safe" count. The requested charges, however, were not adjusted to the evidence presented. Morrissette's blood alcohol was .16 and his requested charges covered situations where the blood alcohol level is either between .05 and .08 or less than .05. A requested jury charge must be tailored to the indictment and adjusted to the evidence. *Jones v. State*, 200 Ga. App. 519, 521 (2) (c) (408 SE2d 823) (1991). It was not error for the trial court to refuse to give these charges.

(b) It was similarly not error for the trial court to refuse to charge the jury on accident. Although Morrissette had been in an accident, the charges against Morrissette related not to the accident but to his condition while driving.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, Morrissette states several times that this Court failed to view the videotape shown to the jury. It is indeed true that this Court failed to view the tape; it was not sent up with the record. The court reporter's index to the trial transcript indicates that this exhibit was "retained by counsel." The burden is on the appellant to bring up all portions of the record and evidence necessary to his or her appeal. If physical evidence is relied upon by a party, it is the duty of that party to include it as part of the transcript. "It is a well-established appellate rule that the burden is on the appellant to show error by the record, and when a portion of the

evidence bearing upon the issue raised by the enumeration of error is not brought up so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result." (Citations and punctuation omitted.) *Ross v. State*, 195 Ga. App. 624, 626 (3) (394 SE2d 418) (1990).

*Motion for reconsideration denied.*

DECIDED OCTOBER 22, 1997 —
RECONSIDERATION DENIED NOVEMBER 18, 1997 —

*William C. Head*, for appellant.

*Ralph T. Bowden, Jr., Solicitor, Elaine W. Brooks, W. Cliff Howard, Assistant Solicitors*, for appellee.