A02A1434. THE STATE v. PEIRCE.
(571 SE2d 826)

JOHNSON, Presiding Judge.

Arjen William Peirce was charged with driving under the influence of alcohol and failing to maintain a lane. He filed a motion in limine and motion to suppress evidence obtained during the stop based on the police officer's statement to him that his refusal to take a state-administered breath test would result in the suspension of his license. In his motions, Peirce argued that the officer's information was incorrect, inasmuch as the Georgia officer was without authority to have his Texas driver's license suspended.

The trial court initially denied the motions. But when Peirce's motion for reconsideration was heard by a different judge, the motions for reconsideration, in limine, and to suppress were granted. The trial court found that Peirce was given misleading information about the effect that a refusal to submit to a state-administered breath test would have on his out-of-state license, and that the misleading information may have induced Peirce to agree to submit to the test.

The state appeals, contending the trial court erred in: (1) considering and granting the motion for reconsideration; and (2) granting the motions in limine and to suppress when the state showed, inter alia, that the police officer initially gave the proper, complete implied consent warning, that Peirce was a Georgia resident, and that the officer gave two incorrect statements of the law which "cancelled each other out." We hold that there was a substantial basis for the trial court's decision, and so affirm the judgment.

In cases involving the review of the grant of a motion to suppress or motion in limine, we must construe the evidence most favorably to

---

[7] See *Campbell v. State*, 268 Ga. 44, 45-46 (1), (2) (485 SE2d 185) (1997).

uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous.[1] Where the evidence at a hearing on the motion is undisputed and no question regarding the credibility of witnesses is presented, we review the trial court's ruling to ensure that there was a substantial basis for it.[2] The trial court's application of the law to undisputed facts is subject to de novo review.[3]

The evidence in this case shows that a police officer with Gwinnett County's DUI Task Force stopped Peirce on I-85 for allegedly failing to maintain his lane. When the officer asked Peirce for his driver's license, Peirce handed him his Texas driver's license. The officer read Peirce the implied consent notice applicable to drivers age 21 or over, which included a notice that if the driver refuses to submit to a state-administered chemical test of his breath, his Georgia driver's license or privilege to drive on the highways of this state will be suspended.[4] The notice also stated that if the driver submits to testing and has a certain blood alcohol concentration, his Georgia license or privilege to drive on the highways of this state may be suspended.[5]

After reading the notice, the officer asked Peirce if he would consent to a state-administered chemical test of his breath. Peirce told the officer that he was thinking about it, and that his job required that he drive. He asked the officer what would happen if he did not pass the test. The officer replied that Peirce would lose his license. Peirce then asked the officer what would happen if he refused to take the test. The officer told Peirce that he would lose his driver's license. Although Peirce had given the officer his out-of-state license, the men apparently did not specifically discuss the fact that Peirce's was not a Georgia license.

Peirce agreed to take the test, but did not decide to do so until after the officer told him the consequences of refusing to take the test. Peirce testified that he needed to keep his license in order to keep his job and the company car, and that "I felt that I had no real choice but to submit to the test because I knew that if I refused the test, I'd lose my license."

1. The state contends that the trial court erred in granting Peirce's motions in limine and to suppress. It contends that since the officer read the appropriate implied consent notice completely and

---

[1] *Wells v. State*, 227 Ga. App. 521 (489 SE2d 307) (1997).
[2] *State v. Terry*, 236 Ga. App. 248, 249 (511 SE2d 608) (1999).
[3] Id.
[4] See OCGA § 40-5-67.1 (b) (2).
[5] Id.

accurately, and Peirce was a resident of the state of Georgia at the time of the stop, the notice was sufficient. We disagree.

One who operates a motor vehicle on Georgia's highways is deemed to have given consent to chemical testing of a bodily substance to determine the presence of alcohol or other drugs.[6] Although consent is implied, before test results may be admitted into evidence the state must show that the accused had been advised of his rights under the Implied Consent Statute.[7] Where the consent was based at least in part on deceptively misleading information concerning a penalty for refusal which the state was not authorized to implement, there was no informed choice and the test results are inadmissible.[8]

In *Deckard*,[9] we reversed the denial of a motion in limine where the officer informed the suspect that his failure to submit to a state-administered breath test would result in the suspension of his driver's license, even though the suspect had a Tennessee driver's license.[10] We held that because the consent was based in part on misleading information, the consent implied by law was not voluntary and the test results were inadmissible.[11]

Similarly, in *Rojas v. State*,[12] we agreed with the defendant that an officer's statement that her Florida driver's license would be suspended due to her refusal to submit to state-administered testing was inaccurate and misleading. We held, though, that *Deckard* did not require suppression of the evidence because the officer's statement to Rojas was harmless: it was made after Rojas refused to take the state-administered test, so the statement did not coerce Rojas to consent to the state-administered test.[13]

Although *Rojas* was decided on other grounds, namely that the misstatement was harmless under the circumstances, the Court suggested that *Deckard* would have controlled had Rojas been given misinformation about the consequences of refusal to submit to testing, and then consented to testing.[14]

In *State v. Terry*,[15] this Court affirmed the grant of a motion in limine because a suspect, having been properly informed of her implied consent rights, was subsequently misinformed that she would have to "bond out" of jail before she could obtain an indepen-

---

[6] OCGA § 40-5-55 (a); see OCGA § 40-5-67.1 (b) (2).
[7] *Deckard v. State*, 210 Ga. App. 421, 423 (436 SE2d 536) (1993); see *Carthon v. State*, 248 Ga. App. 738, 740 (1) (548 SE2d 649) (2001).
[8] *Deckard*, supra.
[9] Id.
[10] Id.
[11] Id.
[12] 235 Ga. App. 524 (509 SE2d 72) (1998).
[13] Id. at 527 (2).
[14] Id.
[15] Supra, 236 Ga. App. at 248.

dent test.[16] The officer and breath test machine operator gave the suspect misleading responses to her questions regarding the notice. We held that the misleading information was relevant to the suspect's decision whether to agree to the state-administered test.[17] In *Terry*, we were not persuaded by the state's argument that it is acceptable for an officer to give a suspect misleading responses regarding the warning so long as the notice initially given was accurate, and provided the officer did not intend to mislead the suspect.[18] The statements made to the suspect after the proper notice was read were misleading and could have affected her decision, regardless of the officer's intent.[19]

In the instant case, after the officer read the appropriate implied consent notice to Peirce, the officer told him that if he did not submit to the breath test, his driver's license would be suspended. The officer was not authorized to implement such a penalty for refusal, since Peirce was driving with an out-of-state license.[20] Peirce's consent to submit to the state-administered breath test was based, at least in part, on misleading information concerning a penalty for refusal. The error was not harmless because Peirce submitted to the breath test after he was misinformed about the consequences of refusing.[21] There is a substantial basis for the trial court's ruling.[22]

We are not convinced by the state's argument that *Deckard*, *Coleman* and *Renfroe* are distinguishable because Peirce was a resident of Georgia, while the defendants in those cases were not.

At the outset, we note that the evidence is not conclusive on this point. Peirce testified that he lived in Texas "prior to living in Atlanta," and the officer's incident report indicated that Peirce had a Georgia address. We note that at the time the motions in limine and to suppress were heard, Peirce was living in Illinois. Evidence in the record is very sparse on the point, and we have a duty to construe the evidence to uphold the judgment of the trial court.[23] Thus, we do not agree with the state that Peirce's state of residence clearly distinguishes this case from those cited.

---

[16] Id. at 249.

[17] Id. at 251.

[18] Id. at 250.

[19] Id. at 251.

[20] See *Deckard*, supra; *State v. Coleman*, 216 Ga. App. 598, 599 (455 SE2d 604) (1995) (affirming grant of motion in limine where officer told driver with out-of-state license that license would be suspended for failing to submit to chemical breath test); *State v. Renfroe*, 216 Ga. App. 709, 710 (455 SE2d 383) (1995) (affirming grant of motion in limine where officer did not advise driver with out-of-state license that only his privilege to drive in Georgia could be suspended for refusing to submit to test).

[21] Compare *Rojas*, supra.

[22] See *Terry*, supra at 249.

[23] See *Wells*, supra.

More importantly, the state's argument misses the point. The decisions which the state attempts to distinguish are based on the fact that Georgia Public Safety officials are without authority to absolutely suspend a driver's license issued in another state.[24] As we stated in *Coleman*,[25] the State of Georgia cannot control or know for certain what other states will do when a suspect fails to submit to a Georgia breath test. The issue in a case like the one before us is where the license was issued and whether *the State of Georgia* is authorized to suspend the license.[26]

Nor are we convinced that the officer's incorrect statement was harmless because he made two misstatements which "cancelled each other out." The information given to Peirce contained substantial misleading, inaccurate information and confused him as to his implied consent rights.[27]

Accordingly, the trial court did not err in granting Peirce's motions in limine and to suppress.

2. The state argues that the trial court's order granting Peirce's motion for reconsideration incorrectly states that the officer advised Peirce that his license would be suspended for a period of one year.[28] According to the state, the record does not support the finding that the officer said the suspension would be for one year. And, the state argues that the order fails to mention Peirce's testimony that the officer told him his license would be suspended if he took and failed the test. Despite the state's contention, these are not "critical errors [which suggest] faulty reasoning in the rendering" of the order.

First, the amount of time any suspension would last was not germane to the court's holding. As discussed above, what was relevant was the officer's statement that Peirce's out-of-state license would be suspended, regardless of the time period. We note, in any event, that the one-year time period is included in the statute and the implied consent notice card read to Peirce.[29]

Second, the trial court was not required to refer in its order to every parcel of evidence it considered. There is a legal presumption that the trial court considered the entire record before rendering its

---

[24] See, e.g., *Deckard*, supra at 422; *Coleman*, supra.

[25] Supra.

[26] See *State v. Levins*, 234 Ga. App. 739, 741 (3) (507 SE2d 246) (1998) (officer's failure to specify that suspect's *Georgia* license will be suspended for refusal to submit to testing not fatal, because suspect was a Georgia resident with a Georgia license and *his Georgia license could in fact be suspended*).

[27] See *Terry*, supra at 251; compare *State v. Kirbabas*, 232 Ga. App. 474, 479 (1) (c) (502 SE2d 314) (1998) (where officer's statements following warning were not false or misleading).

[28] The state concedes in its reply brief that enumeration 1 (a) through (c) were not preserved in the trial court and have been waived.

[29] See OCGA § 40-5-67.1 (b) (2).

decision, though it may not recite so in its order.[30] The state has not shown error in this regard.

Judgment affirmed. Blackburn, C. J., and Miller, J., concur.

DECIDED SEPTEMBER 27, 2002.

Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Assistant Solicitor-General, for appellant.

Head, Thomas, Webb & Willis, Gregory A. Willis, for appellee.

---

[30] See generally Calhoun v. Bone, 189 Ga. App. 396, 398 (1) (375 SE2d 871) (1988).