**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 28, 2013**

# In the Court of Appeals of Georgia

A12A2445. THE STATE v. BARNARD.

PHIPPS, Presiding Judge.

The state appeals from a trial court order granting Lachelle Barnard's motion in limine to exclude the results of an Intoxilyzer 5000 breath test obtained at the time of her arrest for making an improper u-turn[1] and driving under the influence.[2] The state contends that the trial court erred in excluding the Intoxilyzer test results on the basis of its finding that the arresting officer had informed Barnard that her out-of-state license would be suspended if she did not submit to the state-administered breath test, and its finding that the officer did not read the correct implied consent

---

[1] OCGA § 40-6-121 (4).

[2] OCGA § 40-6-391 (a) (1).

notice to Barnard. Because we find no substantial basis for the trial court's ruling, we reverse.

"Where the evidence at a hearing on a motion in limine is uncontroverted, and no issue exists regarding the credibility of witnesses, we review the trial court's ruling to ensure that there was a substantial basis for it. The trial court's application of the law to the undisputed facts is subject to de novo review."[3]

At the hearing on Barnard's motion in limine, the arresting officer testified that on November 11, 2010 he observed Barnard's vehicle make a u-turn at an intersection where a posted sign prohibited such a turn. The officer conducted a traffic stop. He smelled a strong odor of alcohol coming from the vehicle. Barnard told the officer that she had drunk an alcoholic beverage at the restaurant she had just left. The officer observed that Barnard's speech was slurred and her eyes were bloodshot. He asked Barnard to exit her vehicle; and Barnard did so. The officer observed that Barnard was unsteady on her feet, and he smelled a strong odor of alcohol coming from her breath. When he asked for her driver's license, Barnard produced a North Carolina driver's license.

---

[3] *State v. Chun*, 265 Ga. App. 530, 531 (594 SE2d 732) (2004) (citation and punctuation omitted).

Barnard performed a field sobriety test, and the officer noted two clues of impairment. Barnard blew into an Alco-Sensor device, which gave a positive result. The officer arrested Barnard for driving under the influence. Concerning what transpired next, the following colloquy occurred on direct examination:

Q. Did you read her her Georgia implied consent warning?

A. I did.

Q. And which section did you read?

A. Georgia Implied Consent Notice For Suspects Age 21 And Over.

Q. How were you able to determine her age?

A. From her license.

Q. Officer, I just handed you what we've marked State's 1 for the Court. Would you identify that.

A. Yes. It's a beat up copy of my Intox card I keep in my shirt.

Q. Is it an accurate copy of your Georgia implied consent card?

A. It is.

Q. And is that the warning that was in effect at the time of this arrest?

A. It is.

Q. Did you read it verbatim to the Defendant?

3

A. I did.

A copy of the officer's implied consent card was admitted in evidence. The card pertinently stated:

> IMPLIED CONSENT NOTICE/SUSPECTS AGE 21 OR OVER
>
> Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (*designate which test*) under the Implied Consent Law?[4]

The officer testified that he had asked Barnard to submit to a breath test, and that Barnard consented and submitted to the test.

---

[4] See OCGA § 40-5-67.1 (b) (2) (Implied consent notice for suspects age 21 or over).

On cross-examination, the officer testified, "I read her implied consent outside the car. . . . As soon as I put her in handcuffs, told her she was under arrest and I read her implied consent." Concerning what the officer told Barnard about her license being suspended, the following colloquy occurred.

Q. Do you recall telling her that her driver's license would be suspended if she refused the test?

A. No. I read her implied consent. It says it in implied consent.

Q. So you don't recall any conversation after that?

A. No. It says: Your driver's license will be suspended for a minimum period of one year if you refuse this testing.

Q. Okay. So you told her her driver's license would be suspended for a period of one year?

A. It's in the implied consent, when I read it to her. Yes, sir.

The trial court excluded the results of the breath test, finding, pertinently:

Officer [name] informed [Barnard] that her license would be suspended if she did not submit to the state administered breath test. This Court finds that Officer [name] read the implied consent warning card for drivers licensed by the State of Georgia. However, Defendant Barnard had a North Carolina driver's license and as a result the officer did not

5

read the correct warnings to [Barnard]. Therefore, [Barnard]'s Motion to Suppress the intoxilyzer results is hereby GRANTED.

Barnard submitted to the testing, which showed that she had a blood alcohol concentration level of 0.133. Barnard did not testify at the hearing.

1. The state contends that the trial court erred in excluding the Intoxilyzer test results based on the court's finding that the arresting officer had informed Barnard that her license would be suspended if she did not submit to the state-administered breath test. We agree with the state.

> The determinative issue with the implied consent notice is whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing. Even when the officer properly gives the implied consent notice, if the officer gives additional, deceptively misleading information that impairs a defendant's ability to make an informed decision about whether to submit to testing, the defendant's test results or evidence of his refusal to submit to testing must be suppressed. The suppression of evidence, however, is an extreme sanction and one not favored in the law.[5]

Georgia's Department of Driver Services ("DDS") is primarily responsible for, among other things, the "[a]dministration of the laws and regulations relating to

---

[5] *McHugh v. State*, 285 Ga. App. 131, 133 (645 SE2d 619) (2007) (citation omitted).

6

drivers' licenses," as provided for in OCGA § 40-5-1 et al.[6] As it concerns a nonresident motor vehicle driver, OCGA § 40-5-51 (a) pertinently provides: "The *privilege* of driving a motor vehicle on the highways of this state given to a nonresident under this chapter shall be subject to suspension or revocation by [DDS] only when suspension or revocation is required by law for the violation."[7] Consequently, DDS has no authority to suspend or revoke the driver's license of a nonresident motorist.[8] And while Barnard cites in her appellate brief several cases in which this court held that exclusion of test results was required when the holder of an out-of-state driver's license was told by a law enforcement officer that his/her

[6] See OCGA §§ 40-16-2 (a) (1); 40-5-1 (7).

[7] (Emphasis supplied).

[8] See *McHugh*, supra; *Deckard v. State*, 210 Ga. App. 421, 422 (436 SE2d 536) (1993). In 1993, when *Deckard* was decided, OCGA § 40-5-1 (7) defined "Department" as used in Chapter 5 of Title 40, as the Department of Public Safety; OCGA § 40-5-51 (a) provided: "The privilege of driving a motor vehicle on the highways of this state given to a nonresident under this chapter shall be subject to suspension or revocation by the department in like manner and for like cause as a driver's license issued under this chapter may be suspended or revoked."

license would be suspended for refusing to submit to authorized testing designated by the officer,[9] this is not such a case.

When considered in context, the officer's testimony provided no evidence from which the trial court could have concluded that the officer had told Barnard that her North Carolina driver's license would be suspended if she did not submit to the breath test. The officer testified that he read *verbatim* to Barnard the implied consent notice for suspects 21 years of age or over, and a copy of the officer's implied consent card from which he had read was admitted in evidence. That notice pertinently provided that a suspect's *Georgia* driver's license would be suspended if s/he refused to submit to testing.[10]

The officer testified that he did not recall having any conversations with Barnard after he arrested her, other than reading his implied consent card to her.[11]

---

[9] *Kitchens v. State*, 258 Ga. App. 411, 412-415 (1) (574 SE2d 451) (2002); *State v. Peirce*, 257 Ga. App. 623, 625-627 (1) (571 SE2d 826) (2002); *Deckard*, supra, at 422-423.

[10] See OCGA § 40-5-67.1 (b) (2); *McHugh*, supra at 134.

[11] See *Kitchens*, supra at 413, 415 (1); *Peirce*, supra at 626 (1); *State v. Terry*, 236 Ga. App. 248, 250 (511 SE2d 608) (1999) (affirming exclusion of evidence of defendant's refusal to submit to a blood alcohol test following arrest for driving under the influence of alcohol; although police officer read defendant the implied consent notice, officer subsequently attempted to respond to questions about defendant's

And there was no contradictory evidence presented by Barnard, who did not testify at the hearing. We have held that an officer showed compliance with the implied consent notice requirements where the officer testified that he had read verbatim to a suspect his implied consent card which was admitted in evidence, though the officer summarized *for the jury* the language of the notice.[12] Accordingly, we find that under the circumstances of this case, there was no substantial basis for the trial court's exclusion of the results of the breath test.[13]

2. The state contends that the trial court erred in excluding the results of the Intoxilyzer (breath) test on the basis of the court's finding that the officer did not read

---

rights and gave defendant extraneous and misleading information); cf. *McHugh*, supra at 131-132, 134 (prior to reading implied consent notice, police officer stated to driver with out-of-state license that the notice dealt with the driver's license and privilege to drive in Georgia; held, officer's warning was substantively accurate so as to permit driver to make an informed decision about whether to consent to the state-administered breath test); *Chun*, supra at 531-533 (reversing exclusion of evidence that defendant refused to submit to state-administered chemical testing, where, among other things, police officer had read implied consent notice and accurately answered subsequent questions from suspect about consequences of refusal to submit to testing).

[12] See *Fletcher v. State*, 307 Ga. App. 131, 133 (4) (704 SE2d 222) (2010).

[13] See id.; *Chun*, supra at 533.

the correct notice to Barnard when Barnard presented a North Carolina driver's license. We agree with the state.

OCGA § 40-5-67.1 (b) pertinently provides that an arresting officer shall select and read to a person arrested for violation of OCGA § 40-6-391,[14] one of three implied consent notices. The first notice is to be read to suspects under the age of 21; the second notice is to be read to suspects age 21 or over; and the third notice is to be read to suspects driving commercial motor vehicles.[15] Barnard does not assert that she was under the age of 21, or that she occupied a commercial motor vehicle. Thus, there was no appropriate implied consent notice that the officer could have read to Barnard, other than the notice that he had read to her, for suspects age 21 or over. We note that that implied consent notice appropriately notified Barnard that her *privilege* to drive on the highways of this state would be suspended if she refused the testing.[16]

Based on the foregoing, we reverse the trial court's order granting the motion to exclude the breath test results.

---

[14] See OCGA § 40-6-391 (prohibiting driving under the influence of alcohol, drugs, or other intoxicating substances; and setting forth penalties).

[15] See OCGA § 40-5-67.1 (b) (1), (2), and (3).

[16] See OCGA §§ 40-5-51 (a); 40-5-67.1 (b) (2).

*Judgment reversed. Ellington, C. J., and Dillard, J., concur.*